David WOLFER, Respondent,

v.

MICROBOARDS MANUFACTURING,
LLC, et al., Appellants.

No. C1–02–839.

Court of Appeals of Minnesota.

Dec. 17, 2002.

Jonathan S. Parritz, Jacques T. Cowan, Melissa M. Weldon, Maslon Edelman Borman & Brand, LLP, Minneapolis, for respondent.

Kay Nord Hunt, Seth M. Colton, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellants.

Considered and decided by KALITOWSKI, Presiding Judge, and KLAPHAKE, Judge, and HARTEN, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant Microboards Manufacturing, LLC challenges the district court's confirmation of an arbitration award arguing that the award should be vacated because (1) appellant was not a party to the agreement to arbitrate; and (2) the arbitrator exceeded his powers.

## FACTS

On August 17, 2000, David Wolfer (respondent) agreed to sell certain assets to Microboards Technology, LLC. An asset purchase agreement governed the sale. As part of the transaction, respondent and Technology also entered into a separate operating agreement that formed Microboards Manufacturing, LLC (appellant). According to the terms of the agreement, Technology and Wolfer were "members" under the operating agreement. Manufacturing was not a "member."

Wolfer was an employee of Manufacturing until October 24, 2000, when Manufacturing and Wolfer decided to end their relationship. Wolfer and Manufacturing entered into a "confidential termination of employment agreement and general release." The general release stated that the parties released each other "from any liability arising from the employment relationship."

On November 22, 2000, a letter was sent to Wolfer requesting that Wolfer transfer his shares back to the company pursuant to the terms of the operating agreement. Paragraph 5.03(b) of that operating agreement stated that upon a member's termination or withdrawal of employment, Manufacturing would purchase all of the membership interest of that member. On December 1, 2000, Wolfer returned his membership share certificates. On December 12, 2000, Manufacturing's general counsel sent a letter to Wolfer outlining a payment plan for the shares pursuant to paragraph 5.04(c) of the operating agreement.

But Manufacturing never paid respondent for the shares, and Wolfer made a demand for arbitration based on Manufacturing's breach of the operating agreement. Paragraph 12.05 of the operating agreement contained a mandatory arbitration clause that stated

> members irrevocably agree that all actions or proceedings in any manner or respect, arising out of or from or related to this operating agreement shall be arbitrated by binding arbitration * * * within Hennepin County Minnesota.

Manufacturing submitted to arbitration and responded with affirmative defenses and counterclaims. Manufacturing argued that the asset purchase agreement was induced by fraud and that the operating agreement, which was closely related to the asset purchase agreement, was there-fore also induced by fraud. In addition, Manufacturing made a request to amend its answering statement and counterclaim to include breaches of the operating agreement, breach of fiduciary duty, unjust enrichment, conversion, and waste of company assets.

The arbitrator ruled in favor of Wolfer and awarded Wolfer seven semi-annual installment payments of $81,347.24. This award was identical to the payment plan outlined in the letter Manufacturing's general counsel had sent to Wolfer in December 2000. In addition, the arbitrator granted Wolfer's motion to strike Manufacturing's counterclaims based on a lack of jurisdiction, concluding that Manufacturing's counterclaims were related to the asset purchase agreement and that the asset purchase agreement stated that disputes involving the asset purchase agreement would be arbitrated in San Francisco. Finally, the arbitrator denied Manufacturing's motions to amend to add new counterclaims against Wolfer, ruling that: (1) some of the new counterclaims proposed by Manufacturing were again related to the asset purchase agreement and were therefore subject to arbitration in San Francisco, not Minnesota; and (2) the general release entered into between Manufacturing and Wolfer barred the rest of Manufacturing's new counterclaims because those claims were employment related.

Following the award, Manufacturing brought a motion seeking to modify or correct the award. Manufacturing argued that the award should be overturned because no arbitration agreement existed between Wolfer and Manufacturing for Wolfer's claim because: (1) Manufacturing was not a "member" and therefore was not subject to the arbitration clause; and (2) Wolfer's general release of Manufacturing superceded the operating agreement.

The arbitrator denied the request to overturn the award. The arbitrator noted that Manufacturing's arguments were being made for the first time after the award had already been entered. The arbitrator therefore ruled that Manufacturing raised these arguments too late.

Manufacturing raised these same arguments in a motion to the district court, as well as arguing that the arbitrator exceeded his powers. The district court concluded that Manufacturing was estopped from arguing that no arbitration agreement existed because Manufacturing did not raise that issue until after the arbitrator had issued the award. In addition, the district court found that Manufacturing failed to provide sufficient evidence to show that the arbitrator had exceeded his powers.

## ISSUES

1. Is appellant estopped under Minn. Stat. § 572.19, subd. 1(5) (2000), from raising the issue that there was no agreement to arbitrate?

2. Did the arbitrator exceed his powers pursuant to Minn.Stat. § 572.19, subd. 1(3) (2000)?

## ANALYSIS

### I.

■ The issue presented here is whether, under Minn.Stat. § 572.19, subd. 1(5) (2000), appellant may be estopped from arguing that an arbitration award must be vacated on the ground that no arbitration agreement existed between appellant and respondent. This is an issue of statutory interpretation, which we review de novo. *See Boutin v. LaFleur,* 591 N.W.2d 711, 714 (Minn.1999), *cert. denied,* 528 U.S. 973, 120 S.Ct. 417, 145 L.Ed.2d 326 (1999).

We first examine the language of section 572.19 to determine its application. Minn. Stat. § 572.19, subd. 1, states in relevant part that a court shall vacate an arbitration award where:

(3) The arbitrators exceeded their powers; * * * or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 572.09 and the party did not participate in the arbitration hearing without raising the objection.

Manufacturing argues that the issue of whether an arbitration agreement exists may not be waived under the statute, contending that section 572.19, subdivision 1(3), applies. *See Rosenberger v. American Family Mut. Ins. Co.,* 309 N.W.2d 305 (Minn.1981) (holding that a party is not estopped from challenging the arbitrability of an issue). Manufacturing argues that Wolfer's claims related to violations of the operating agreement and that since Manufacturing was not a "member" and did not sign the operating agreement, it is not bound by the arbitration clause contained in the operating agreement. Manufacturing argues in the alternative that even if it were initially bound by the arbitration clause contained in the operating agreement, the general release signed by both Manufacturing and Wolfer superseded the operating agreement. Since the general release released Manufacturing from all liability arising from the employment relationship and contained no arbitration clause, Manufacturing contends that it has no obligation to arbitrate.

But Wolfer argues that Manufacturing is relying on the wrong provision of section 572.19. Wolfer contends that after an arbitration award is complete, Minnesota courts prohibit a party from arguing for the first time that no arbitration agreement exists, citing section 572.19, subdivision 1(5). *See Twomey v. Durkee,* 291 N.W.2d 696 (Minn.1980).

■ A statute should be interpreted, whenever possible, to give effect to all of its provisions, and "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999). Various provisions of the same statute must be interpreted in light of each other, and the legislature must be presumed to have understood the effect of its words and to have intended the entire statute to be effective and certain. *Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 74, 93 N.W.2d 690, 698 (1958).

We acknowledge that previous court of appeals decisions, while reaching the correct result, have not always been consistent in applying the holdings in *Rosenberger* and *Twomey* to section 572.19. Thus, we clarify here. We conclude that the holding in *Rosenberger* can be distinguished from the holding in *Twomey* because the holdings apply to different provisions of section 572.19, subdivision 1.

■ In regard to vacating an arbitration award, *Rosenberger* is only applicable to Minn.Stat. § 572.19, subd. 1(3). Although *Rosenberger* discusses Minn.Stat. § 572.19, subd. 1(5), that discussion was in dicta. The relevant issue in *Rosenberger* was whether a certain issue fell within the scope of an arbitration agreement. *Rosenberger* states that when it is "reasonably debatable" whether an issue falls within the scope of an arbitration agreement, a party may seek to have the arbitration award vacated pursuant to Minn.Stat. § 572.19, subd. 1(3), on the ground that the arbitrators exceeded their powers, even if that issue was not raised until after the arbitration award was completed. *Rosenberger*, 309 N.W.2d at 308–09. Thus, the *Rosenberger* decision is applicable when a party agrees that an arbitration agreement exists but disagrees that a particular issue is arbitrable. This holding was consistent with the holding in *State v. Berthiaume*, 259 N.W.2d 904 (Minn.1977).

■ But *Twomey* addresses Minn.Stat. § 572.19, subd. 1(5), the provision at issue here. In *Twomey*, the issue was not whether it was "reasonably debatable" that a party's claims fell under an existing arbitration agreement. Rather, the issue was whether an arbitration agreement existed at all. In those circumstances, the supreme court held that parties are "estopped by their participation in the arbitration proceeding from later asserting that they had no contractual obligation to do so." *Twomey*, 291 N.W.2d at 698. The court explained that by acquiescing in and participating in the arbitration proceeding, the plaintiffs had "in effect represented that the contract provision for arbitration was in force * * *." *Id.* at 699. The court added that

[t]o permit them now to claim that the absence of a contractual obligation to arbitrate invalidates the decision and award would be obviously prejudicial to defendants and in our view requires the application of estoppel to preclude such inequitable conduct.

*Id.* (citations omitted).

Similarly, in *Helmerichs v. Bank of Minneapolis & Trust Co.*, an employee demanded arbitration of his employer pursuant to the employment contract. *Helmerichs v. Bank of Minneapolis & Trust Co.*, 349 N.W.2d 326, 327 (Minn.App. 1984). An arbitration hearing occurred and an award was entered in favor of the employee. *Id.* Only in a posthearing brief submitted to the arbitrators did appellant argue that the illegality of the employment contract voided the arbitration clause. *Id.* Relying on *Twomey*, this court stated that a "party may lose its right to object to arbitration by participating in arbitration without raising an objection to doing so." *Id.* (citations omitted). The court then

stated that "[t]o allow a claim of no agreement to arbitrate after the hearing is over results in a waste of time and money." *Id.* at 328.

Here, as in *Twomey* and *Helmerichs,* the "reasonably debatable" analysis of *Rosenberger* is inapplicable because Manufacturing's argument is not that Wolfer's claims fall outside the scope of an existing arbitration agreement, but rather that no arbitration agreement exists at all. Thus, Manufacturing's arguments must be analyzed pursuant to Minn.Stat. § 572.19, subd. 1(5), because Manufacturing's arguments are based on the assertion that Manufacturing is not bound by an arbitration agreement.

As discussed above, to vacate an arbitration award on the ground that no arbitration agreement exists requires the application of Minn.Stat. § 572.19, subd. 1(5), which in turn requires an application of *Twomey* rather than *Rosenberger.* Under *Twomey,* a party may be estopped from arguing that no arbitration agreement exists if an objection is not raised during the arbitration hearing. Here, Manufacturing never brought a motion or submitted a brief to the arbitrator raising that argument. Manufacturing only raised that objection after the completion of the arbitration award. Because Manufacturing failed to raise in a timely fashion the argument that no arbitration agreement existed, Manufacturing is estopped from raising that argument now.

In conclusion, we reject Manufacturing's contention that *Rosenberger* allows Manufacturing to argue that it has no obligation to arbitrate even though it raised that issue for the first time following the completion of the arbitration hearing. Minn. Stat. § 572.19, subd. 1(5), states that in order to vacate an arbitration award on the ground that no arbitration agreement existed, the party may not participate in the arbitration hearing without raising the objection. To accept Manufacturing's position that Minn.Stat. § 572.19, subd. 1(3), applies would make Minn.Stat. § 572.19, subd. 1(5), a nullity, which would violate a basic tenet of statutory construction.

## II.

Manufacturing also argues that the arbitration award must be vacated pursuant to Minn.Stat. § 572.19, subd. 1(3), because the arbitrator exceeded his powers in interpreting both the operating agreement and the general release and in calculating the payment plan.

An appeal from an arbitration decision is subject to limited review and the reviewing court must exercise "[e]very reasonable presumption" in favor of the arbitration award's finality and validity. *State, Office of the State Auditor v. Minn. Ass'n of Prof'l Employees,* 504 N.W.2d 751, 754 (Minn.1993) (citation omitted). An arbitration award will not be vacated because the court disagrees with the decision on the merits. *AFSCME Council 96 v. Arrowhead Regional Corrections Bd.,* 356 N.W.2d 295, 299–300 (Minn.1984). "Only where the arbitrators have clearly exceeded their powers must a court vacate an award." *National Indem. Co. v. Farm Bureau Mut. Ins. Co.,* 348 N.W.2d 748, 750 (Minn.1984) (citations omitted).

Manufacturing contends that since the arbitrator found that Manufacturing was not a party to the operating agreement, the arbitrator exceeded his powers by allowing respondent to bring a claim against Manufacturing under the operating agreement while at the same time striking all of Manufacturing's counterclaims.

To the extent that Manufacturing again raises the issue that there was no arbitration agreement, Manufacturing's grounds for vacating the arbitration award must be

analyzed under section 572.19, subdivision 1(5). Because Manufacturing participated in the arbitration hearing without raising the objection that no arbitration agreement existed, Manufacturing is estopped from raising that argument now. *Twomey*, 291 N.W.2d at 698.

■ Manufacturing next argues that by allowing respondent to bring a claim against Manufacturing under the operating agreement while at the same time striking all of Manufacturing's counterclaims, the arbitrator made a mistake in applying his own theory, and this brought about a result not in accord with the arbitrator's own reasoning and judgment. *See Cournoyer v. American Television & Radio Co.*, 249 Minn. 577, 577, 83 N.W.2d 409, 412 (1957). But the arbitrator did not misapply his own theory by striking all of Manufacturing's counterclaims. The arbitrator did not prevent Manufacturing from arbitrating its counterclaims because Manufacturing was not a party to the operating agreement. Rather, the arbitrator did not allow Manufacturing to arbitrate its counterclaims because the arbitrator found that Manufacturing's counterclaims arose under a separate asset purchase agreement. The asset purchase agreement stated that disputes would be arbitrated in San Francisco. Therefore, the arbitrator properly decided that Wolfer's claim was within the jurisdiction of the Minnesota arbitration proceeding while Manufacturing's counterclaims were not.

Manufacturing also argues that the arbitrator exceeded his powers in interpreting the general release. The arbitrator stated that Manufacturing released Wolfer from any and all claims. Manufacturing argues that the general release not only released Wolfer from any and all claims, but that it also released Manufacturing from any and all claims. Manufacturing contends that since the arbitrator decided that the re-

lease freed respondent from all claims, the arbitrator also had to decide that the release freed Manufacturing from all claims. We disagree.

■ In determining whether an arbitrator exceeded his authority, this court considers whether an award draws its essence from the parties' agreement. *City of Minneapolis v. Police Officers' Fed'n of Minneapolis*, 566 N.W.2d 83, 87 (Minn. App.1997). If an award is rationally derived from an agreement viewed in the light of the agreement's language, content, and indicia of intent, it should be upheld. *Id.*

■ Here the arbitrator did not exceed his powers in interpreting the general release. In denying Manufacturing's motion to modify or correct the arbitration award, the arbitrator stated that the general release applied only to employment-related claims and then suggested that Wolfer's claim was not employment related. Based on the language of the general release, the arbitrator's interpretation is rational. More importantly, the actions of the parties indicated an intent to arbitrate Wolfer's claim because Manufacturing failed to argue that the general release prevented Wolfer's claim until after the arbitration award was complete. Therefore, throughout the arbitration hearing, the parties acted as though the general release did not bar Wolfer's claim. Thus, the arbitrator did not exceed his powers in allowing Wolfer's claim to proceed despite the existence of the general release.

■ Manufacturing's final argument is that the arbitrator's payment plan violates the terms of the operating agreement. First, we note that the payment plan ordered by the arbitrator was identical to the payment plan proposed by Manufacturing's own general counsel in the December 12, 2000, letter that was sent to Wol-

fer. More importantly, this issue was not presented to the arbitrator, and it was not raised to the district court. We therefore refuse to address this issue for the first time here. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988).

## DECISION

Contrary to the provisions of Minn.Stat. § 572.19, subd. 1(5), appellant participated in the arbitration hearing without raising the objection that no arbitration agreement existed. Therefore, under the principles of *Twomey*, Manufacturing is estopped from arguing that no arbitration agreement existed. Moreover, because appellant failed to provide sufficient evidence that the arbitrator exceeded his powers, the district court properly rejected appellant's argument that the arbitration award should be vacated pursuant to Minn. Stat. § 572.19, subd. 1(3).

**Affirmed.**