**SEAGATE TECHNOLOGY, LLC,**
Petitioner, Appellant,

v.

**WESTERN DIGITAL CORPORATION,**
et al., Respondents,

Sining Mao, Respondent.

No. A12–1944.

Court of Appeals of Minnesota.

July 22, 2013.

Lewis A. Remele, Jr., Charles E. Lundberg, Mark R. Bradford, Bassford Remele, P.A., Minneapolis, MN; and Robert N. Hochman, pro hac vice, Sidley Austin, L.L.P., Chicago, IL, for appellant.

Clifford M. Greene, Larry D. Espel, Greene Espel, P.L.L.P., Minneapolis, MN; and Lisa S. Blatt, pro hac vice, Arnold & Porter, L.L.P., Washington, D.C.; and Michael D. Schissel, New York, NY, for respondents Western Digital, et al.

George W. Soule, Nathan J. Marcusen, Bowman and Brooke, L.L.P., Minneapolis, MN, for respondent Sining Mao.

Considered and decided by HUDSON, Presiding Judge; PETERSON, Judge; and STAUBER, Judge.

## OPINION

STAUBER, Judge.

In this discretionary appeal, appellant challenges a district court order vacating in part a trade-secrets arbitration award and ordering a rehearing before a new arbitrator. Appellant argues that the district court erred by (1) determining that the arbitrator exceeded his authority by precluding respondents from defending particular claims as a sanction for respondents' fabrication of evidence and that respondents had not waived an objection to the arbitrator's authority in that regard; (2) reviewing the merits of the arbitrator's decision to impose sanctions; (3) granting vacatur based on public policy; and (4) ordering a rehearing before a new arbitrator. Because we conclude that respondents waived any objection to the arbitrator's authority, that the arbitrator had authority to impose the challenged sanction, and that the award does not violate public policy, we revese and remand for entry of an order and judgment confirming the award.

## FACTS

Appellant Seagate Technology LLC, a hard-drive manufacturer, employed respondent Sining Mao until October 2006, when Mao left to accept a position with Seagate's competitor, respondent Western

Digital Corporation.[1] Mao's employment agreement with Seagate included the following arbitration clause:

> *Arbitration:* Except as stated below, I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Hennepin County, Minnesota, in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses.

After Mao joined Western Digital, Seagate commenced an action in district court seeking injunctive relief to prevent Mao's disclosure of Seagate's trade secrets. The employment agreement was disclosed during discovery; respondents moved to compel arbitration; and the district court granted the motion. Judge Robert Schumacher, a retired member of this court who had previously been appointed by the district court as a special master for discovery, was selected as the arbitrator.

Before the arbitration hearing took place, Seagate brought motions for sanctions based on respondents' alleged spoliation and fabrication of evidence. At Western Digital's urging, the arbitrator deferred consideration of the motions until after the arbitration hearing.

After four years of prehearing preparation and discovery amassing 14,000 pages of information, the arbitration hearing was held over 34 days. The parties tried trade-secrets claims against Mao and Western Digital; claims against Mao for breaches of contract and fiduciary duty; and a claim against Western Digital for tortious interference with contractual relations. The arbitrator issued a 27–page decision, addressing the merits of both the sanctions motions and the claims.

The arbitrator found insufficient evidence of spoliation but found that Mao had fabricated documents intended to prove that three of the trade secrets—referenced as Trade Secrets 4–6—had been publicly disclosed before Mao left Seagate. The fabrication involved Mao's addition of two PowerPoint slides to his copy of a presentation that he had given while still employed by Seagate. These two slides were not present in other copies of the presentation that were obtained during discovery. The arbitrator found that the additional slides were identical to other slides that Mao had created after becoming employed at Western Digital and that, if they had been prepared while Mao was at Seagate—as he claimed—they would not have had the Western Digital format. The arbitrator found that "Dr. Mao fabricated the ... presentations ... while he was working at Western Digital for the purposes of this litigation." The arbitrator further found that "[t]he fabrications were obvious" and that there "is no question that Western Digital had to know of the fabrications."

In determining an appropriate sanction, the arbitrator stated that:

> Dr. Mao's fabrication of evidence and Western Digital's complicity by submitting the obviously fabricated evidence to the Arbitrator is an egregious form of litigation misconduct and warrants se-

---

1. Mao and Western Digital are collectively referred to as "respondents."

vere sanctions. *See Harris Trust & Savings Bank v. Ali,* [100 Ill.App.3d 1, 55 Ill.Dec. 186] 425 N.E.2d 1359, 1366 ( [ ]1981) ("When evidence is shown to have been fabricated, a presumption arises that the cause of action or the defense it was intended to support is without substantial foundation.") (quoting 2 Callaghan's Illinois Evidence § 3.152 (1964)).

The arbitrator imposed a sanction in the form of precluding "any evidence or defense by Western Digital and Dr. Mao disputing the validity" or use of Trade Secrets 4–6 and "[e]ntry of judgment against Western Digital and Dr. Mao of liability for misappropriation and use of" Trade Secrets 4–6.

Consistent with the sanction ordered, the arbitrator found in favor of Seagate on its trade-secrets claims arising out of Trade Secrets 4–6 and also found that Mao had breached his employment contract.[2] The arbitrator awarded damages totaling $525 million and awarded prejudgment interest totaling nearly $100 million and post-award interest of more than $9 million.

Seagate brought a motion in district court to confirm the more than $630 million arbitration award, and respondents moved to vacate it. Following a hearing, the district court issued an order confirming the award in part, vacating it in part, and ordering a rehearing. The district court determined that the arbitrator did not have authority to impose sanctions for the fabrication of evidence, and that, even if the arbitrator did have such authority, he misapplied sanctions law by failing to

consider a lesser sanction. The court further reasoned that public policy supported vacatur.

Western Digital petitioned for discretionary review of the district court's order, and this court granted the motion.

## ISSUES

I.  Did the district court err by vacating the arbitration award on the ground that the arbitrator exceeded his authority?

II.  Did the district court err by reviewing the merits of the arbitrator's decision to impose sanctions?

III.  Did the district court err by vacating the arbitration award on the ground that the award violates public policy?

IV.  Did the district court abuse its discretion by ordering rehearing before a different arbitrator?

## ANALYSIS

■ Arbitration is a proceeding favored in law. *Ehlert v. West. Nat'l Mut. Ins. Co.,* 296 Minn. 195, 199, 207 N.W.2d 334, 336 (1973). Thus, "[a] judicial appeal from an arbitration decision is subject to an extremely narrow standard of review." *Hunter, Keith, Indus. Inc. v. Piper Capital Mgmt., Inc.,* 575 N.W.2d 850, 854 (Minn.App.1998). The courts must "exercise every reasonable presumption in favor of the award's finality and validity." *Id.* (quotation omitted).

■ Under Minnesota's Uniform Arbitration Act (UAA), Minn.Stat. §§ 572.08–.30 (2008),[3] a district court, upon applica-

---

**2.** The arbitrator found in favor of Mao and Western Digital with respect to other alleged trade secrets and on Seagate's claims for breach of fiduciary duty and tortious interference with contract.

**3.** In 2010, the legislature repealed Minn.Stat. §§ 572.08–.30, effective August 1, 2012, and recodified the Uniform Arbitration Act at Minn.Stat. §§ 572B.01–.31.2010 Minn. Laws ch. 264, art. 1, §§ 1–32 at 499–511. Pursuant to a savings clause, however, the repealed

tion, must "confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award." Minn.Stat. § 572.18. The UAA articulates specific circumstances under which district courts must vacate awards:

> Upon application of a party, the court shall vacate an award where:
>
> (1) The award was procured by corruption, fraud or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
>
> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 572.12, as to prejudice substantially the rights of a party; or
>
> (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 572.09 and the party did not participate in the arbitration hearing without raising the objection;

> But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

Minn.Stat. § 572.19, subd. 1.[4]

## I.

Appellant first challenges the district court's determination that the arbitrator exceeded his authority by imposing sanctions against respondents, arguing that respondents waived any objection to the arbitrator's authority to impose the exclusionary sanction and, alternatively, that the district court erred by determining that the arbitrator did not have authority to impose sanctions and by reviewing the merits of the arbitrator's decision to impose sanctions.[5]

### A. Waiver

Although the parties do not address it, there is Minnesota authority relative to the issue of waiver in the context of arbitration proceedings. Under the UAA, and specifically section 572.19, subdivision 1(5), a party may not seek to vacate an arbitration award on the basis that there was not an arbitration agreement if the party "participate[d] in the arbitration hearing without

---

provisions continue to apply to this case, which was commenced in October 2006. Minn.Stat. § 572B.30 (2012) (providing that "[s]ections 572B.01 to 572B.31 do not affect an action or proceeding commenced or right accrued before sections 572B.01 to 572B.31 take effect").

4. To the extent that arbitration agreements relate to transactions that "involve or affect interstate commerce," they are also governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16, which preempts inconsistent provisions of Minnesota law. *Onvoy, Inc. v. SHAL, LLC,* 669 N.W.2d 344, 351 (Minn.2003). The grounds for vacatur in the UAA are similar to the grounds set forth in the Federal Arbitra-

tion Act. *Hunter,* 575 N.W.2d at 854 (citing 9 U.S.C. § 10). Neither party addresses the applicability of the FAA in this case, and it does not appear that the result under the UAA would be inconsistent with the result under the FAA. Accordingly, we address the parties' arguments under the UAA.

5. Appellant also asserts that, even if the arbitrator had exceeded his authority, the arbitration award could be confirmed on alternative grounds. We are not persuaded by appellant's arguments in this regard, but do not separately address them because our determinations on the issues of waiver and arbitrator authority are dispositive.

raising the objection." Minn.Stat. § 572.19, subd. 1(5). This court has interpreted this provision, and supreme court caselaw, to preclude a party from disputing the existence of an agreement to arbitrate if that issue was not raised before the arbitrator. *Wolfer v. Microboards Mfg.*, 654 N.W.2d 360, 364–65 (Minn.App.2002) (citing *Rosenberger v. Am. Fam. Mut. Ins. Co.*, 309 N.W.2d 305 (Minn.1981); *Twomey v. Durkee*, 291 N.W.2d 696 (Minn.1980)), *review denied* (Minn. Feb. 26, 2003). Conversely, the court has explained that

> when it is "reasonably debatable" whether an issue falls within the scope of an arbitration agreement, a party may seek to have the arbitration award vacated pursuant to Minn.Stat. § 572.19, subd. 1(3), on the ground that the arbitrators exceeded their powers, even if that issue was not raised until after the arbitration award was completed.

*Wolfer*, 654 N.W.2d at 364.

Although the UAA and *Wolfer* address the circumstances under which a party waives the right to object to arbitration, both generally and with respect to particular issues, they do not address the precise issue raised in this case, i.e., under what circumstances does a party waive the right to object to an arbitrator's authority to impose particular relief. The Eighth Circuit, however, has addressed waiver in the context of arbitrator authority to impose particular remedies. In *Wells Fargo Bank, N.A. v. WMR e–PIN, LLC,* the Eighth Circuit held that appellants waived their right to challenge an arbitrator's authority to grant injunctive relief by failing to make that objection to the arbitrator and by themselves requesting injunctive relief from the arbitrator. 653 F.3d 702, 711–12 (8th Cir.2011). Although *Wells*

*Fargo* addresses waiver of objections to the authority to impose particular remedies, as opposed to sanctions, we find its analysis persuasive. Applying that analysis here, we conclude that respondents waived their challenge to the arbitrator's authority to impose sanctions by (1) failing to make that challenge to the arbitrator during the arbitration and (2) requesting the arbitrator to impose sanctions against appellant.[6]

### 1. Respondents' failure to preserve an objection

■ The parties dispute whether respondents properly preserved an objection to the arbitrator's authority to impose sanctions. The district court found that respondents had properly preserved the argument, and respondents argue that those findings are entitled to deference from this court, citing *Fedie v. Mid–Century Ins. Co.*, 631 N.W.2d 815, 819 (Minn. App.2001) (explaining that waiver of a contractual right to arbitrate is ordinarily a question of fact), *review denied* (Minn. Oct. 16, 2001). Assuming that the district court's determination that there was no waiver during the arbitration proceedings is a finding subject to deferential review, we conclude that the district court's finding in this regard was clearly erroneous. The portions of the record that respondents cite, and on which the district court relied, all contain arguments against imposition of sanctions on the merits; respondents provide no citation to a portion of the record in which they argued that the arbitrator did not have the authority to impose the requested sanctions for spoliation and fabrication of evidence. Accordingly, we conclude that the record does not support the district court's finding.

---

**6.** Because our application of the *Wells Fargo* analysis is dispositive in this case, we need not determine and do not address whether it provides the exclusive manner by which to prove waiver of an objection to the arbitrator's authority to grant certain relief.

Respondents also argue that their objection need not have taken a particular form in order to preserve the objection, relying on our supreme court's decisions in *Regenscheid v. Farm Bureau Mut. Ins. Co.*, 652 N.W.2d 261 (Minn.2002), and *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860 (Minn.2010). In *Regenscheid*, an appeal arising out of no-fault arbitration, the court held that a party need not refuse to participate in arbitration in order to preserve an objection to the arbitrability of particular issues, but rather could file a written objection under Minn. No–Fault Arb. R. 34. 652 N.W.2d at 264. The party in that case sent a letter expressly stating that it was not waiving the issue. *Id.* In *Anda*, an appeal arising out of condemnation proceedings, the supreme court acknowledged that, although a party had not moved to exclude certain evidence in the district court, it had argued to the district court that the evidence should not be relied upon; the court further concluded that review of the admissibility of the evidence was warranted in the interests of justice under Minn. R. Civ. Ap. P. 103.04. 789 N.W.2d at 875. Neither of these cases can be construed to allow a party to completely fail to advise an arbitrator of objections to that arbitrator's authority, and then obtain a judicial determination of that authority. Although respondents may be correct that their objections need not take a particular form, they nevertheless must have made an objection on the particular grounds that they now seek to assert. Thus, we reject respondents' reliance on *Regenscheid* and *Anda*.

## 2. Respondents' request for sanctions

The parties also dispute whether respondents themselves sought to invoke the arbitrator's authority to impose sanctions. Appellant argues that respondents' request for discovery sanctions fulfills this factor. Respondents do not dispute that they sought discovery sanctions, but assert that their request for "remedial" sanctions cannot be equated with appellant's request for "punitive" ones. We agree with appellant that there is no basis for such a distinction. Accordingly, we conclude that respondents did seek to invoke the very authority of the arbitrator that they now seek to challenge.

Based on the foregoing, we hold that respondents waived their right to object to the arbitrator's authority to impose sanctions. Our holding in this regard is dispositive of the issue of arbitrator authority and could end our analysis. Nevertheless, in the interests of justice, we will also address the district court's determination that the arbitrator exceeded his authority.

## B. Arbitrator's authority to impose sanctions

■ The scope of the arbitrators' powers is a matter of contract to be determined from a reading of the parties' arbitration agreement, and an arbitrators' award will be set aside by the courts only when the objecting party meets its burden of proof that the arbitrators have *clearly* exceeded the powers granted to them in the arbitration agreement; courts will not overturn an award merely because they may disagree with the arbitrators' decision on the merits.

*State, Office of State Auditor v. Minn. Ass'n of Prof'l Employees (MAPE)*, 504 N.W.2d 751, 755 (Minn.1993) (quotation omitted); *see also Indep. Sch. Dist. No. 279 v. Winkelman Bldg. Corp.*, 530 N.W.2d 583, 586 (Minn.App.1995) ("The scope of the arbitrator's power is determined by the intent of the parties."), *review denied* (Minn. July 20, 1995).

■ In this case, the arbitration agreement broadly provides for arbitration of "any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of" the employment agreement. The agreement further provides that arbitration is to be conducted "in accordance with the rules then in effect of the American Arbitration Association" and that the arbitrator "may grant injunctions or other relief in such dispute or controversy." But both the agreement and the governing AAA rules are silent on whether the arbitrator may impose sanctions for bad-faith conduct. The parties dispute the significance of that silence.

The Minnesota courts have not addressed arbitrator authority to impose sanctions. With respect to fashioning remedies, however, our supreme court has held that "the power to fashion a remedy is a necessary part of the arbitrator's jurisdiction unless withdrawn from him by specific contractual language between the parties or by a written submission of issues which precludes the fashioning of a remedy." *City of Bloomington v. Local 2828 of Am. Fed'n of State, County & Municipal Emp'es*, 290 N.W.2d 598, 603 (Minn.1980); *see also David Co. v. Jim W. Miller Const., Inc.*, 444 N.W.2d 836, 842 (Minn.1989) (explaining that such power is "implicit in the exceedingly broad powers which were granted by the parties" in a broadly worded arbitration agreement). The court has observed "a general trend of the courts, in the absence of limiting language in the contract itself, to accord judicial deference and afford flexibility to arbitrators to fashion awards comporting with the circumstances out of which the disputes arose." *David Co.*, 444 N.W.2d at 841. The court has explained that recognizing such power in arbitrators is "entirely consistent with this court's long tradition of favoring the use of arbitration in

dispute resolution and rejecting challenges to its employment, which, if granted, would limit, rather than expand, its utility." *Id.*

■ We believe a similar analysis should be applied to determine whether an arbitrator has authority to impose sanctions. Accordingly, we find persuasive and adopt the reasoning of the courts that have found that a broadly worded arbitration agreement, with no limiting language to the contrary, "confers inherent authority on arbitrators to sanction a party that participates in the arbitration in bad faith." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2nd Cir. 2009); *see also AmeriCredit Financial Servs., Inc. v. Oxford Mgmt. Servs.*, 627 F.Supp.2d 85, 96 (E.D.N.Y.2008) (holding that arbitrator had authority to dismiss claims as a sanction for the destruction of evidence, reasoning that "there is no language in the [agreement] that prevents an arbitrator from dismissing a claim on that basis"). We further note that, although the AAA rules for employment disputes do not expressly authorize sanctions, they also do not limit the arbitrator's authority to impose sanctions. Specifically, Rule 39(d) of the Employment Arbitration Rules and Mediation Procedures broadly allows the arbitrator to "grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law." And here, the parties do not dispute that the sanctions imposed on respondents would have been available in a court of law. *See, e.g., Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 392 (E.D.Cal.1992) (striking answer, dismissing counterclaim, and granting default judgment, as sanctions for fabrication of evidence by defendant); *Eppes v. Snowden*, 656 F.Supp. 1267, 1269 (E.D.Ky.1986) (striking answer and counterclaim as sanc-

tion for fabrication of evidence by defendant).

Respondents assert—and the district court concluded—that the arbitrator did not have authority to impose sanctions because other arbitration rules expressly allow for the imposition of sanctions, while the AAA rules for employment disputes are silent on the issue. In construing statutes, Minnesota courts have sometimes reasoned that the legislature's inclusion of language in one statute demonstrates an opposite intent in other statutes or parts of a statute where the legislature could have, but did not, include the language. *See, e.g., City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 756 (Minn.2013) (reasoning that legislature did not intend for statute to apply differently to state-owned property, relying on legislature's use of language distinguishing property owned by the state in another part of the Minnesota statutes, which indicated that the legislature "knows how to make that distinction clear" when it so intends). To the extent that the rules cited by respondents are rules of different arbitration organizations, this reasoning holds no application. Moreover, even with respect to the other set of AAA rules that respondents cite, it is not clear that the same author or authors are involved such that any inference can be drawn from the inclusion of sanction provisions in these rules. Accordingly, we reject the argument that the specific authorization of sanctions in other arbitration rules compels the conclusion that the AAA rules for employment disputes do not authorize sanctions.

Respondents and the district court also rely on an article written by Loyola Law School Professor Georgene M. Vairo. In that article, Professor Vairo asserts, without citation to any legal authority, that, "[s]ince the arbitrator's authority to impose sanctions is completely dependent on the arbitration agreement, it follows that if the agreement is silent as to sanctions, the arbitrator may not impose them." Georgene M. Vairo, *The Use of Sanctions in Arbitration Sanctions & Arbitration Proceedings*, at 14 in *Sanctions Developments 2012* (ALI–ABA 2012). The district court's order quotes a lengthy section of the article, in which Professor Vairo discusses the possibility of granting an arbitrator authority to sanction either through the arbitration agreement or the relevant arbitration rules. But the district court's order does not include a subsequent paragraph in which Professor Vairo acknowledges that "the courts' may read into a parties' agreement an inherent power to sanction when a party to an arbitration proceeds in bad faith." *Id.* at 15 (citing *ReliaStar*, 564 F.3d 81). As we have observed above, this inherent-authority approach is most consistent with Minnesota caselaw. Thus, we conclude that the district court erred in relying on Professor Vairo's unsupported assertion regarding arbitration agreements that are silent as to sanctions.

We hold that the district court erred by determining that the arbitrator did not have authority to impose sanctions.

**II.**

■ Appellant next asserts that the district court erred by granting vacatur based on its conclusion that the arbitrator misapplied sanctions law. We agree. Minnesota law makes clear that, "[a]s to the merits of a dispute, ... the arbitrator is to be the final judge of both law and fact." *Metro. Airports Comm'n v. Metro. Airports Police Fed'n*, 443 N.W.2d 519, 524 (Minn.1989) (citing *State v. Berthiaume*, 259 N.W.2d 904, 910 (Minn.1977)); *see also Peggy Rose Revocable Trust v. Eppich*, 640 N.W.2d 601, 606 (Minn.2002) (emphasizing that "arbitrators are the final

judges of both law and fact"); *MAPE*, 504 N.W.2d at 754; *David Co.*, 444 N.W.2d at 840 (same); *Park Constr. Co. v. Ind. Sch. Dist. No. 32*, 216 Minn. 27, 33, 11 N.W.2d 649, 653 (1943) (same).[7] Accordingly, an arbitration award " 'will not be reviewed or set aside for mistake of either law or fact in the absence of fraud, mistake in applying its own theory, misconduct, or other disregard of duty.' " *Hunter*, 575 N.W.2d at 854 (quoting *Cournoyer v. Am. Television & Radio Co.*, 249 Minn. 577, 580, 83 N.W.2d 409, 411 (1957)). It is equally well established that "courts will not overturn an award merely because they disagree with the arbitrator's decision on the merits." *MAPE*, 504 N.W.2d at 754–55. The district court's excursion into the merits of sanctions law violated these bedrock principles.

Both the district court and respondents appear to have proceeded under the mistaken premise that an arbitration decision may be vacated for mere misapplication of the law. They cite language from the Minnesota Practice treatise to the effect that: "[I]f arbitrators are required to apply the law, they must do so, and courts may review their legal decisions de novo."

5 Roger S. Haydock & Peter S. Knapp, *Minnesota Practice* § 12:13 (2012–13 ed.). In support of the quoted sentence, the Minnesota Practice authors cite to the Minnesota Supreme Court's decision in *Metro. Waste Control Comm'n v. City of Minnetonka*, 308 Minn. 385, 242 N.W.2d 830 (1976). In that case, the supreme court explained that "[t]he scope of arbitrators' power is controlled by the language of the submission" and that when "the arbitrators are not restricted by the submission to decide according to principles of law, they may make an award according to their own notion of justice without regard to the law." *Metro. Waste*, 308 Minn. at 389, 242 N.W.2d at 832. When "the arbitrators are restricted, however, they have no authority to disregard the law." *Id.* The court held that vacatur of the arbitration award in that case was required because the arbitrators had expressly found violations of the applicable law but then refused to impose the remedies dictated for those violations. *Id.* at 390, 242 N.W.2d at 832–33. Thus, *Metro. Waste* does not stand for the proposition that an arbitrator's mere misinterpretation of the law compels vacatur.[8]

---

7. No-fault arbitrations are excepted from this rule; "no-fault arbitrators are limited to deciding questions of fact, leaving the interpretation of law to the courts." *Gilder v. Auto–Owners Ins. Co.*, 659 N.W.2d 804, 806 (Minn. App.2003). "The limitation on the final authority of arbitrators is based on the perceived need for consistency in interpretation of the No–Fault Act." *Id.*

8. *Metro. Waste* may be an application of the manifest-disregard doctrine. "Manifest disregard of the law, a doctrine that provides a narrow basis for vacating an arbitration award, has been recognized by a number of state and federal courts." *Hunter*, 575 N.W.2d at 855. In order for this doctrine to apply, "the record, other than the result, must show the arbitrators knew the law and expressly disregarded it." *Id.* " 'Manifest disregard' involves more than an error or mis-

understanding of law." *Id.* The Minnesota Supreme Court has not expressly adopted or even addressed the manifest-disregard doctrine, and this court has not embraced it. *See Hunter*, 575 N.W.2d at 855–56 (questioning whether Minnesota courts should adopt doctrine but ultimately concluding that case did not fall into narrow circumstances in which doctrine would apply even if adopted). Moreover, recent federal precedent suggests that the manifest-disregard doctrine may no longer be available as a basis separate from those bases articulated in the FAA. *See Medicine Shoppe Int'l Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 489 (8th Cir.2010) (holding that manifest-disregard basis for vacatur is "not cognizable" after the Supreme Court's decision in *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008)).

## III.

■ Appellant next asserts that the district court erred by determining that the award violated public policy. The public-policy exception to enforcement of arbitration awards has not been expressly adopted by the Minnesota courts and, even if it were to be adopted, the exception is a narrow one. *See MAPE,* 504 N.W.2d at 756–58 (Minn.1993) (discussing U.S. Supreme Court's adoption of narrow exception and finding no public policy basis for vacating arbitration award reinstating employee who embezzled from state); *Hunter,* 575 N.W.2d at 856–57 (noting that "Minnesota courts have not formally adopted the public policy exception" and finding no public policy basis for vacating arbitration award allegedly preempted by ERISA). Moreover, the exception applies only when "enforcement of the award would violate some well-defined and dominant public policy." *MAPE,* 504 N.W.2d at 757. The policy must be "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.* (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of America,* 461 U.S. 757, 766 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983)). The district court's order suggests that the award is contrary to "justice," "ascertainment of the truth," and "avoidance of surprise at trial." Respondents assert that the award is contrary to the policy favoring disposal of cases on the merits. We conclude that these general assertions do not meet the requirement that a party identify a specific and dominant public policy that would be violated by confirming the arbitration award.

Neither party argues manifest disregard, and the district court stated in a footnote that "[m]anifest disregard was not argued and

## IV.

■ Appellant finally asserts that the district court abused its discretion by directing a rehearing before a different arbitrator. The UAA provides the district court with discretion to order a rehearing before the same or different arbitrators:

In vacating the award on grounds other than stated in clause (5) of subdivision 1, the court may order a rehearing before new arbitrators chosen as provided in the agreement, or in the absence thereof, by the court in accordance with section 572.10, or, if the award is vacated on grounds set forth in clauses (3) and (4) of subdivision 1, the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with section 572.10.

Minn.Stat. § 572.19, subd. 3. Notwithstanding this statutory discretion, our supreme court has held that "[r]emanding ... to the arbitrators who originally heard the dispute promotes the speedy resolution of disputes which the arbitration act seeks to encourage." *Metro. Airports Comm'n,* 443 N.W.2d at 525. "Only where the award was procured by fraud or corruption or the arbitrator exhibited partiality toward one of the parties is rehearing by a different arbitrator required." *Id.* Accordingly, the supreme court has "urge[d] [district] courts to make findings and give reasons for the appointment of a different arbitrat[or] on remand." *Id.*

We conclude that the district court abused its discretion by directing a rehearing before a different arbitrator without making findings that the award was procured by fraud or corruption, or that the arbitrator exhibited partiality, or some other basis for beginning the arbitration

does not provide a basis for this Court's decision."

anew. There is no allegation in this case that the arbitration award was the result of fraud or corruption. With respect to partiality, the district court's memorandum discusses differences in the treatment of appellant's and respondents' expert witnesses and asserts, in a footnote, that "[c]areful perusal of the transcript reveals many similar discrepancies." But the district court does not tie this discussion to the decision to direct a rehearing before a new arbitrator and makes no findings whatsoever regarding the basis for requiring a new arbitrator. Accordingly, even if the district court had not erred in vacating the award, we would find error in the direction for appointment of a new arbitrator.

## DECISION

We reverse the district court's partial vacatur of the arbitration award and order directing a rehearing. Respondents waived their objection to the arbitrator's authority to impose sanctions. We also conclude that the district court erred by determining that the arbitrator did not have sanctioning authority, and that the district court should not have reviewed the merits of the arbitrator's decision to impose sanctions. We further conclude that appellants failed to establish that confirming the arbitration award will violate a well-defined and dominant public policy. Accordingly, we remand for entry of an order and judgment confirming the arbitration award.

**Reversed and remanded.**