STATE OF MINNESOTA

IN SUPREME COURT

A12-1944

Court of Appeals                                                    Anderson, J.
                                                              Concurring, Stras, J.


Seagate Technology, LLC,

                    Respondent,

vs.                                                    Filed:  October 8, 2014
                                                     Office of Appellate Courts
Western Digital Corporation, et al.,

                    Appellants,

Sining Mao,

                    Appellant.

_____

Lewis A. Remele, Jr., Charles E. Lundberg, Mark R. Bradford, Bassford Remele, Minneapolis, Minnesota; and

Robert N. Hochman, Sidley Austin LLP, Chicago, Illinois, for respondent.

Clifford M. Greene, Larry D. Espel, John M. Baker, Greene Espel PLLP, Minneapolis, Minnesota;

Lisa S. Blatt, Arnold & Porter, LLP, Washington, District of Columbia; and

Michael D. Schissel, Arnold & Porter, LLP, New York, New York, for appellants Western Digital Corporation, et al.

Nathan J. Marcusen, Isaac W. Messimore, Bowman and Brooke LLP, Minneapolis, Minnesota; and

1

George W. Soule, Soule & Stull, LLC, Minneapolis, Minnesota, for appellant Sining Mao.

Katherine L. MacKinnon, Law Office of Katherine L. MacKinnon, P.L.L.C., Saint Louis Park, Minnesota, for amicus curiae Minnesota Chamber of Commerce.

Karl E. Robinson, Sweeney & Masterson, P.A., Saint Paul, Minnesota; and

Peter R. Afrasiabi, One LLP, Newport Beach, California, for amicus curiae Professor Georgene M. Vairo.

Scott Cody, Tarshish Cody, PLC, Chaska, Minnesota; and

Professor David Allen Larson, Hamline University School of Law, Saint Paul, Minnesota, for amicus curiae Professor David Allen Larson.

Corey J. Ayling, Douglas M. Carnival, McGrann Shea Carnival Straughn & Lamb, Chartered, Minneapolis, Minnesota, for amicus curiae Minnesota High Technology Association.

Alan L. Kildow, Sonya R. Braunschweig, DLA Piper LLP, Minneapolis, Minnesota, for amicus curiae Professor George A. Bermann.

Daniel J. Supalla, Briggs and Morgan, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

Sharon L. Van Dyck, Van Dyck Law Firm, PLLC, Saint Louis Park, Minnesota, for amicus curiae Minnesota Association for Justice.

_____

## S Y L L A B U S

1.      Challenges to an arbitration award brought under Minn. Stat. § 572.19, subd. 1(3)-(4) (2010), do not require an objection as a condition precedent to the challenge.

2.      Vacatur is inappropriate under Minn. Stat. § 572.19, subd. 1(3), when the arbitration agreement gives the arbitrator authority to "grant injunctions or other relief,"

2

the controlling arbitration rules authorize the arbitrator to "grant any remedy or relief that would have been available to the parties had the matter been heard in court," and the sanctions issued fall within this grant of authority.

3.    Challenges to an arbitrator's failure to use certain evidence in fashioning an award are outside the scope of Minn. Stat. § 572.19, subd. 1(4), and do not warrant vacatur under this provision.

Affirmed.

O P I N I O N

ANDERSON, Justice.

An arbitrator issued an award against appellants Sining Mao, Western Digital Corporation, and Western Digital Technologies, Inc., in an amount exceeding $500 million. The award was vacated in part by the district court and then reinstated by the court of appeals. Mao and the Western Digital entities now separately seek review of the reinstatement decision. Mao and Western Digital argue that the arbitrator's punitive sanctions, which precluded any evidence or defense and entered a judgment of liability on certain claims, must be vacated under Minn. Stat. § 572.19, subd. 1(3)-(4) (2010),[1]

---

[1]    Effective August 1, 2011, Minn. Stat. §§ 572.09, 572.12, and 572.19 (2010) were repealed and replaced with Minn. Stat. §§ 572B.07, 572B.15, and 572B.23 (2012), respectively, which contain substantially similar language. Act of April 22, 2010, ch. 264, art. 1, §§ 7, 15, 23, 32-33, 2010 Minn. Laws 499, 501-02, 505, 508-09, 511. But because the arbitration began in October 2006, the repealed provisions continue to govern this case pursuant to a savings clause. *See* Minn. Stat. § 572B.30 (2012) (providing that sections 572B.01 to 572B.31 do not affect an action commenced before the provisions take effect). Unless otherwise indicated, references to provisions in Minn. Stat. ch. 572 (2010) are to the pre-repeal version that governed this arbitration proceeding.

3

because the arbitrator exceeded his authority by issuing these sanctions and substantially prejudiced Mao and Western Digital by refusing to hear evidence material to the controversy. Because we conclude that the arbitrator did not exceed his authority or refuse to hear material evidence as required for vacatur under Minn. Stat. § 572.19, subd. 1(3)-(4), we affirm the decision of the court of appeals reinstating the arbitration award in full.

The arbitration agreement at issue arose out of an employment contract between Mao and his former employer, respondent Seagate Technology, LLC. Seagate designs and manufactures hard disk drives for computers. In his role as senior director for advanced head concepts at Seagate, Mao worked on technology that involves incorporating tunneling magnetoresistance (TMR) into read heads,[2] which, if done successfully, would allow for vastly improved storage capacity on hard disk drives.

When Mao began working for Seagate, he signed an employment agreement stating, among other requirements, that if he left Seagate, he would preserve the confidentiality of all trade secrets, return all company documents, and not solicit any current Seagate employees for other employment using unfair or deceptive means. The employment agreement also contained the following arbitration clause:

> Arbitration: Except as stated below, I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Hennepin County, Minnesota, in accordance with the rules then in effect of

---

[2] A "read/write head" writes data onto or reads data from a magnetic tape or disk. Bharat Bhushan, *Tribology of the Head-Medium Interface*, *in Magnetic Recording Technology* 7.1, 7.1 (C. Denis Mee & Eric D. Daniel eds., 2d ed. 1996).

4

the American Arbitration Association.  The arbitrator may grant injunctions or other relief in such dispute or controversy.  The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration.  Judgment may be entered on the arbitrator's decision in any court having jurisdiction.  The Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses.

Mao left Seagate in September 2006 and joined Seagate's competitor, Western Digital Corporation, in October 2006.  After Mao joined Western Digital, Seagate commenced a district court action seeking injunctive relief to prevent the disclosure of Seagate's trade secrets and later amended its claim to allege actual misappropriation of trade secrets.  Seagate's primary allegation, in essence, was that Mao stole Seagate's trade secrets and confidential information regarding TMR technology and provided it to Western Digital, which Western Digital then used to design and manufacture a TMR read head.  Specifically, Seagate made:  (1) claims against Mao and Western Digital for the misappropriation of eight trade secrets; (2) claims against Mao for breach of contract, breach of fiduciary duty, and breach of loyalty; and (3) a claim against Western Digital for tortious interference with contract.

Western Digital invoked the arbitration clause of the employment agreement, and the district court stayed the lawsuit pending arbitration.  Before the arbitration hearing began, Seagate brought a motion for sanctions against Western Digital and Mao based on alleged fabrication of evidence.[3]  The fabrication related to documents submitted by Western Digital and Mao, which were intended to prove that three of Seagate's claimed

---

[3]     Seagate also brought a motion, later denied, asserting spoliation of evidence.

trade secrets, referred to as Trade Secrets 4-6, had been publicly disclosed before Mao left Seagate. Seagate alleged that Mao had inserted additional PowerPoint slides containing information on Trade Secrets 4-6 into his copy of a presentation that he had given at a conference while employed by Seagate to make it appear as if this information had been presented in public, and therefore did not qualify as trade secrets.

In the motion for sanctions based on fabrication, Seagate requested "a sanction commensurate with the severity of the misconduct." Specifically, Seagate requested an order precluding Western Digital and Mao "from presenting any defense to the trade secret misappropriation claims asserted against them, including barring [Western Digital and Mao] from (1) disputing the validity and misappropriation of any of Seagate's eight asserted trade secrets, and (2) disputing Western Digital's use of Seagate's eight asserted trade secrets." Seagate also requested compensation for "the costs and attorneys' fees it was forced to incur to investigate and expose the document fabrication and to bring this motion to remedy it." Western Digital and Mao responded by requesting sanctions against Seagate to "compensate the Claimants for the unnecessary fees and costs incurred in defending against Seagate's frivolous charges." Western Digital and Mao also asked the arbitrator to defer consideration of the sanctions motions until after the arbitrator had heard evidence "in the context of the full arbitration hearing," and the arbitrator granted this latter request.

The arbitration hearing was held over 34 days in 2011. The arbitrator found in favor of Mao and Western Digital with respect to claims arising out of Trade Secrets 1-3 and 7-8, concluding that Seagate had failed to prove that the information reflected in

6

these claims met the definition of a trade secret.[4]  Trade Secrets 4-6 were addressed separately, as the arbitrator first reviewed the motion for sanctions based on fabrication and determined that Mao fabricated the disputed slides for the purpose of litigation while working at Western Digital.  The arbitrator stated:  "The fabrications were obvious.  There is no question that Western Digital had to know of the fabrications and yet continued to represent to the Arbitrator that Dr. Mao did in fact insert the disputed slides . . . at the time of the conferences."  The arbitrator concluded that "Dr. Mao's fabrication of evidence and Western Digital's complicity by submitting the obviously fabricated evidence to the Arbitrator is an egregious form of litigation misconduct and warrants severe sanctions."  The arbitrator then cited *Harris Trust & Savings Bank v. Ali*, 425 N.E.2d 1359, 1366 (Ill. App. Ct. 1981), which states that "[w]hen evidence is . . . fabricated, a presumption arises that the cause of action or the defense it was intended to support is without substantial foundation." (citation omitted) (internal quotation marks omitted).  The arbitrator imposed the following sanctions against Western Digital and Mao:

   a) Preclusion of any evidence or defense by Western Digital and Dr. Mao disputing the validity of Seagate's asserted trade secrets 4, 5, and 6;

   b) Preclusion of any evidence or defense by Western Digital and Dr. Mao regarding misappropriation by Western Digital and Dr. Mao of Seagate's asserted trade secrets 4, 5, and 6;

---

[4]  The arbitrator also found for Mao on Seagate's claims for breach of fiduciary duty and for Western Digital on Seagate's claim for tortious interference with contract.

c) Preclusion of any evidence or defense by Western Digital disputing that it has used or is using Seagate's asserted trade secrets 4, 5, and 6 in Western Digital's manufactured TMR read heads; and

d) Entry of judgment against Western Digital and Dr. Mao of liability for misappropriation and use of Seagate's asserted trade secrets 4, 5, and 6.

After determining that Seagate had established that Trade Secrets 4-6 qualified as trade secrets and, consistent with the sanctions, that these trade secrets had been improperly used by Western Digital, the arbitrator found in favor of Seagate on its claims arising out of Trade Secrets 4-6. The arbitrator also found that Mao's testimony, in part due to the fabrication of evidence, lacked credibility and that Mao had breached his employment contract by disclosing confidential information, not returning company documents, and soliciting a Seagate employee for employment at Western Digital. The arbitrator calculated damages based on "the unjust enrichment method," awarding Seagate compensatory damages of $525 million, prejudgment interest totaling nearly $96 million, and post-award interest. The arbitrator determined that Western Digital and Mao are jointly and severally liable for the damages.

Western Digital and Mao brought a motion in Hennepin County District Court to vacate the portion of the arbitration award concerning Trade Secrets 4-6, and Seagate moved to confirm the entire award. Following a hearing, the district court issued an order confirming the award in part, vacating the award in part, and ordering a rehearing before a new arbitrator. The district court determined that the arbitrator's ability to impose sanctions was determined by the arbitration agreement, and that the agreement in this case did not contain provisions that could be interpreted as authorizing sanctions

8

beyond attorney fees. Furthermore, the district court determined that even if sanctions had been permitted, the arbitrator misapplied sanctions law by not allowing Western Digital and Mao to rebut the presumption created by the fabricated evidence that their defense was without substantial foundation. Thus, the district court concluded that the arbitrator exceeded his authority by issuing punitive sanctions against Western Digital and Mao, and so vacatur of the portion of the award impacted by the sanctions was appropriate under Minn. Stat. § 572.19, subd. 1(3). The district court also concluded that by disregarding material evidence when fashioning the award, the arbitrator substantially prejudiced Western Digital and Mao by "refus[ing] to hear evidence material to the controversy," and so Minn. Stat. § 572.19, subd. 1(4), also required vacatur. Therefore, the district court vacated the portion of the award regarding Trade Secrets 4-6, confirmed the award regarding the other claims, and ordered that the matter be reheard before a new arbitrator.

Seagate appealed, arguing that the district court erred by: (1) determining that the arbitrator had exceeded his authority by issuing sanctions and concluding that Western Digital and Mao had not waived their right to challenge the sanctions; (2) reviewing the merits of the arbitrator's decision to impose sanctions; (3) granting vacatur based on public policy; and (4) ordering a rehearing before a new arbitrator. The court of appeals granted discretionary review, then reversed and remanded for entry of an order confirming the award and judgment entered on that order. *Seagate Tech., LLC v. W. Digital Corp.*, 834 N.W.2d 555, 567 (Minn. App. 2013). The court of appeals applied a method of waiver analysis from the Eighth Circuit, which holds that there is a waiver if

9

the party did not object during the arbitration and that party asked the arbitrator to use a power similar to the power they now challenge. *Id.* at 561-62; *see Wells Fargo Bank, N.A. v. WMR e–PIN, LLC*, 653 F.3d 702, 711–12 (8th Cir. 2011). Using this Eighth Circuit method, the court of appeals concluded that Western Digital and Mao had waived their right to challenge the arbitrator's ability to issue punitive sanctions. *Seagate Tech.*, 834 N.W.2d at 561-62.

Although the court of appeals stated that its finding of waiver "is dispositive of the issue of arbitrator authority and could end our analysis," it nonetheless reviewed the merits of the arbitrator's use of punitive sanctions and the district court's order for a rehearing before a new arbitrator. *Id.* at 562. The court of appeals concluded that a broadly worded arbitration agreement confers inherent authority on the arbitrator to impose punitive sanctions, that the arbitrator's possible misapplication of sanctions law did not compel vacatur, that the arbitration award did not violate public policy, and that the district court abused its discretion by directing a rehearing before a new arbitrator. *Id.* at 564-67. We granted Western Digital and Mao's request for further review.

I.

Before evaluating if the arbitrator imposed permissible sanctions on Western Digital and Mao, we must determine if Western Digital and Mao waived their right to request vacatur under Minn. Stat. § 572.19, subd. 1(3)-(4) (2010). We review a district court's determination of waiver for clear error, *In re Civil Commitment of Giem*, 742 N.W.2d 422, 432 (Minn. 2007), but we review the interpretation of a statute de novo, *Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 861 (Minn. 2010).

10

The grounds for Western Digital and Mao's challenges to the arbitration award are statutory. Therefore, although other jurisdictions have developed various methods for analyzing waiver in the context of an arbitration, the necessity of an objection before requesting vacatur under Minn. Stat. § 572.19, subd. 1, is controlled first by the language of the statute.[5] Subdivision 1 provides in relevant part:

[5] The concurrence contends that part of Seagate's argument on the waiver issue is that Mao and Western Digital implicitly waived their ability to seek vacatur under the statute by asking the arbitrator to impose sanctions on Seagate. This is a mischaracterization of the issue. Although there was some discussion of an implicit expansion of the arbitrator's authority by Western Digital and Mao's conduct, Seagate's main focus on the waiver issue has always been on Mao and Western Digital's failure to object, regardless of their conduct in the arbitration. The district court framed the issue as whether Western Digital and Mao conceded that the arbitrator had the authority to impose punitive sanctions by "not stating that the Arbitrator had no authority" to impose punitive sanctions during the arbitration. Likewise, in their briefs to the court of appeals, the main focus of both parties was whether Western Digital and Mao had objected and if such an objection was required either by statute or the American Arbitration Association Employment Arbitration Rules and Mediation Procedures. For example, at the court of appeals Seagate argued that "[t]he failure to object to the Arbitrator's power to decide the issue precludes any argument that the Arbitrator's ruling should be vacated as beyond the scope of his authority." In its brief to our court, Seagate also contends that Western Digital and Mao were required to object during the arbitration regardless of their conduct, arguing that the "failure to object would constitute waiver," that not requiring an objection would risk parties abusing the arbitration process, and that not requiring an objection would be unfair. Mao also frames the issue as a question of waiver by failing to object, regardless of conduct, as he asks us to decide whether "a party waive[s] its right to judicial review if the party d[oes] not make a precisely worded, formal objection during the arbitral proceedings." Thus, the concurrence is simply incorrect in suggesting that we are addressing an issue not raised by the parties by deciding whether or not an objection is required before requesting vacatur under Minn. Stat. § 572.19, subd. 1(3)-(4).

The concurrence raises a question that is not squarely presented by the parties, which is whether Western Digital and Mao's conduct was an intentional relinquishment of their right to object. Although Seagate argues that Western Digital and Mao invoked the arbitrator's power to sanction, the parties have failed to expressly argue whether such an invocation served as an intentional relinquishment of the right to object. For example,
(Footnote continued on next page.)

Upon application of a party, the court shall vacate an award where:

> (1) The award was procured by corruption, fraud or other undue means;
> (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
> (3) The arbitrators exceeded their powers;
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 572.12, as to prejudice substantially the rights of a party; or
> (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 572.09 and the party did not participate in the arbitration hearing without raising the objection.

Western Digital and Mao challenge the arbitration award on the basis of subdivision 1(3), alleging that the arbitrator exceeded his authority, and subdivision 1(4), alleging that the arbitrator refused to hear material evidence. They note that while subdivision 1(5) requires that "the party did not participate in the arbitration hearing without raising the objection," subdivisions 1(3) and (4) do not contain any similar limiting language.

---

(Footnote continued from previous page.)

none of the parties have addressed whether Western Digital and Mao's conduct was an *intentional* relinquishment, which would be a key issue under the concurrence's framing of the issue. As the concurrence notes, the argument that Western Digital and Mao intentionally gave up their right to object "may be more complex" than the parties appreciate, and so we decline to resolve this issue in a case such as this where the parties have not expressly argued or fully briefed the issue. *See Plunkett v. First Nat'l Bank of Austin*, 259 Minn. 562, 563, 107 N.W.2d 220, 220 (1961) (declining to decide "issues [that] have not been fully briefed or presented to us"). Therefore, we disagree with the approach adopted by the concurrence.

We agree that this distinction is significant. We construe a statute "as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant." *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 496 (Minn. 2009) (citation omitted) (internal quotation marks omitted); *see also* Minn. Stat. § 645.16 (2012) ("Every law shall be construed, if possible, to give effect to all its provisions."). Here, if the Legislature had intended for all clauses of Minn. Stat. § 572.19, subd. 1, to implicitly require an objection, the explicit requirement of an objection in subdivision 1(5) would be superfluous. Moreover, "distinctions in language in the same context are presumed to be intentional," *In re Stadsvold*, 754 N.W.2d 323, 328-29 (Minn. 2008), so a condition expressly mentioned in one clause of a subdivision provides evidence that the Legislature did not intend for the condition to apply to other clauses in which the condition is not stated. In addition, "[w]e cannot add words or meaning to a statute that were intentionally or inadvertently omitted." *Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012). Therefore, we cannot conclude that subdivision 1(3)-(4) requires an objection during arbitration when, as evidenced by difference in the language between these clauses and subdivision 1(5), the Legislature appears to have intentionally omitted such a requirement.

Our case law also supports this reasoning. In *Twomey v. Durkee*, we held that the plaintiffs were estopped from challenging the arbitrability of a dispute because they had participated in the arbitration proceedings without objection. 291 N.W.2d 696, 699 (Minn. 1980). *Twomey* recognized that Minn. Stat. § 572.19, subd. 1, requires an

13

objection for challenges brought under subdivision 1(5). But in *Twomey* we also stated that claims based on a violation of Minn. Stat. § 572.19, subd. 1(4), or other clauses of subdivision 1, "except those relating to arbitrability," are "not affected by a finding of estoppel" based on the failure to object. 291 N.W.2d at 699. *Twomey* clearly distinguishes between the necessity of an objection under subdivision 1(5), which involves arbitrability, and the other clauses of section 572.19, subdivision 1, which do not. This distinction is in line with our statutory analysis, suggesting that while subdivision 1(5) claims can be subject to estoppel based on a failure to object, challenges raised under the other clauses of section 572.19, subdivision 1 are not similarly vulnerable to the absence of an objection.

In addition to the statutory analysis, the structure of arbitration proceedings supports this result. Given the very limited appeal rights, the absence of a transcript in many informal arbitration proceedings, and the use of nonlawyers as arbitrators in some arbitration hearings, the imposition of an objection requirement by our court when the Legislature did not do so would be an awkward fit at best. *See, e.g.*, *Larson v. Nygaard*, 148 Minn. 104, 107-08, 180 N.W. 1002, 1003 (1921) (discussing an arbitration in which the arbitrators did not have legal training, all proceedings were oral, no attorneys or advisors could participate, and "[a]ll technicalities were to be disregarded").

Based on this analysis, we conclude that under Minn. Stat. § 572.19, subd. 1, an objection during arbitration is required only for challenges brought under subdivision 1(5) and is not required for challenges brought under the other clauses of that subdivision. We accordingly reject the court of appeals' use of the Eighth Circuit method

14

of waiver analysis for this provision, which would find waiver whenever a party failed to object during the arbitration and invoked the same power during arbitration that the party now challenges on appeal. *See Wells Fargo Bank*, 653 F.3d at 711–12. Although Seagate makes several policy-based arguments in favor of the Eighth Circuit approach, such considerations cannot outweigh the plain language of the statute. *See* Minn. Stat. § 645.08, subd. 1 (2012) (stating that when interpreting statutes, "words and phrases are construed . . . according to their common and approved usage).

We hold that Western Digital and Mao did not waive their right to challenge the arbitration award on the basis of Minn. Stat. § 572.19, subd. 1(3)-(4).

II.

Having concluded that Western Digital and Mao did not waive their right to challenge the arbitration award under Minn. Stat. § 572.19, subd. 1(3)-(4), we must now review the merits of these challenges.

A.

We first examine whether the arbitrator had the authority to impose punitive sanctions that precluded any evidence or defense on certain issues and entered a judgment of liability. Western Digital and Mao contend that by issuing these sanctions, the arbitrator exceeded his authority. Accordingly, they request vacatur under Minn. Stat. § 572.19, subd. 1(3), of the portion of the award impacted by the sanctions. The authority of an arbitrator to impose punitive sanctions, which for purposes of this opinion

15

refers to sanctions stemming from party misconduct,[6] is an issue of first impression in Minnesota. Courts in other jurisdictions are divided not only on the proper result, but also on the method of analysis.[7]

We determine the scope of an arbitrator's authority de novo. *Cnty. of Hennepin v. Law Enforcement Labor Servs., Inc., Local No. 19*, 527 N.W.2d 821, 824 (Minn. 1995). An arbitration award "will be set aside by the courts only when the objecting party meets its burden of proof that the arbitrators have *clearly* exceeded the powers granted to them

---

[6] *See Black's Law Dictionary* 1429 (10th ed. 2014) (defining "punitive" as involving or inflicting punishment); *cf. Taylor v. Illinois*, 484 U.S. 400, 435 (1988) ("[M]isconduct is amenable to direct punitive sanctions against attorneys as a deterrent that can prevent attorneys from systemically engaging in misconduct that would disrupt the trial process.").

[7] Some courts have held that punitive sanctions in arbitrations are not allowed based on public policy reasons. *See Garrity v. Lyle Stuart, Inc.*, 353 N.E.2d 793, 796 (N.Y. 1976) ("Punitive sanctions are reserved to the State . . . ."), *overruled by Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56-59 (1995). Other courts have concluded that punitive sanctions are not incorporated into a broad arbitration agreement without specific language granting the authority. *See Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 944-45 (N.D. Cal. 2003) (requiring express grant of authority before imposing punitive sanctions); *MCR of Am., Inc. v. Greene*, 811 A.2d 331, 343-44 (Md. Ct. Spec. App. 2002) (concluding that the terms "remedy" and "relief" were too vague to include punitive sanctions). But other courts have held that arbitrators do have the power to impose punitive sanctions. Some courts have based this power on a concept of inherent authority. *First Pres. Capital, Inc. v. Smith Barney, Harris Upham & Co., Inc.*, 939 F. Supp. 1559, 1565 (S.D. Fla. 1996) (concluding arbitrators have authority to enforce their directives, including imposing punitive sanctions such as dismissal of a claim). Other courts have grounded the arbitrator authority to issue sanctions in broad language in the arbitration agreement. *See AmeriCredit Fin. Servs., Inc. v. Oxford Mgmt. Servs.*, 627 F. Supp. 2d 85, 96 (E.D.N.Y. 2008) (allowing dismissal of a counterclaim based on destruction of evidence because the agreement enabled arbitrator to resolve "any dispute"); *David v. Abergel*, 54 Cal. Rptr. 2d 443, 445 (Ct. App. 1996) (concluding that an arbitration agreement granting "any remedy or relief to which a party is entitled under California law" grants all powers that a court would have, including the ability to impose punitive sanctions).

in the arbitration agreement; courts will not overturn an award merely because they may disagree with the arbitrators' decision on the merits." *Children's Hosp., Inc. v. Minn. Nurses Ass'n*, 265 N.W.2d 649, 652 (Minn. 1978) (emphasis added); *see also State v. Minn. Ass'n of Prof'l Emps.*, 504 N.W.2d 751, 755-56 (Minn. 1993) ("In evaluating challenges to the scope of an arbitrator's powers, this court's scope of review is very limited . . . ."). In our review of an arbitrator's authority, "[e]very reasonable presumption is exercised in favor of the finality and validity of the award." *Nat'l Indem. Co. v. Farm Bureau Mut. Ins. Co.*, 348 N.W.2d 748, 750 (Minn. 1984).

The arbitrator's ability to issue punitive sanctions is controlled by the arbitration agreement. *Law Enforcement Labor Servs.*, 527 N.W.2d at 824 ("The scope of an arbitrator's authority is a matter of contract interpretation to be determined from a reading of the parties' arbitration agreement."). Therefore, parties are able to include or exclude the use of punitive sanctions when constructing an arbitration agreement, either through express provision or through the incorporation of a particular set of arbitration rules.[8] When reviewing an arbitration agreement to determine the scope of an arbitrator's authority, we use principles of contract interpretation. *Children's Hosp.,* 265 N.W.2d at 652. While courts possess inherent judicial powers that enable them to impose punitive sanctions, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), arbitrators have no

---

[8] For example, the American Arbitration Association (AAA) Commercial Arbitration Rules and Mediation Procedures state that "[t]he arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator." AAA Commercial R. 58(a).

17

correlating inherent authority and receive their powers from either the arbitration agreement, *see Law Enforcement Labor Servs.*, 527 N.W.2d at 824, or the Legislature.[9]

Following principles of contract law, we begin by looking at the language of the agreement. Interpreting a contract requires us to "determine if the language is clear and unambiguous, meaning it has only one reasonable interpretation. If so, we give effect to the language of the [agreement]." *Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884 (Minn. 2010) (citation omitted). Seagate notes that we have often construed arbitration agreements broadly. *See, e.g.*, *Michael-Curry Cos. v. Knutson S'holders Liquidating Trust*, 449 N.W.2d 139, 142 (Minn. 1989); *David Co. v. Jim W. Miller Constr., Inc.,* 444 N.W.2d 836, 842 (Minn. 1989). But we cannot convey broader powers than the words of the arbitration agreement provide under their ordinary meaning. *See Halla Nursery*, 781 N.W.2d at 884-85 (rejecting an interpretation that "directly contradicts the plain terms" of a contract). Although Seagate argues that the arbitrator is empowered to interpret his authority on the basis of the agreement and to impose any award that does not manifestly disregard the spirit of the agreement,[10] the arbitrator

---

[9] The Legislature has occasionally given arbitrators authority through statute. Although enacted after this case, and therefore not relevant here, one example of this type of authority is found in Minn. Stat. § 572B.21(a) (2012), which authorizes arbitrators to award "punitive damages or other exemplary relief if such an award is authorized by law in a civil action involving the same claim and the evidence produced at the hearing justifies the award under the legal standards otherwise applicable to the claim."

[10] *See also Ramsey Cnty. v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 91, Local 8,* 309 N.W.2d 785, 793 (Minn. 1981) ("If arbitration is to remain a viable alternative to problem resolution in the area of industrial strife, the concept of judicial

(Footnote continued on next page.)

18

cannot expand his authority beyond what could reasonably be interpreted from the arbitration agreement.

The arbitration agreement empowered the arbitrator to settle "any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach" of the employment agreement, and the agreement states that "[t]he arbitrator may grant injunctions or other relief in such dispute or controversy." The agreement also says that the arbitration will be conducted in accordance with the "the rules then in effect of the American Arbitration Association." The American Arbitration Association Employment Arbitration Rules and Mediation Procedures (AAA Employment Rules) do not specifically address punitive sanctions, but they do authorize arbitrators to "grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs." AAA Employment R. 39(d) (2009).

We must determine, therefore, whether the power to grant "injunctions or other relief" or "any remedy or relief that would have been available to the parties had the matter been heard in court" includes the power to impose punitive sanctions. Western Digital argues that punitive sanctions are neither a remedy nor a form of relief. Western Digital distinguishes between sanctions issued to punish a party after misconduct, which it labels "punitive sanctions," and sanctions intended to remedy a harm caused to one

(Footnote continued from previous page.)
deference to arbitral authority must encompass the recognition that the arbitrator is the 'reader' of the contract.").

party, which it labels "remedial sanctions." Thus, Western Digital argues that while remedial sanctions, being a form of remedy, are permitted under the parties' arbitration agreement, the punitive sanctions issued here were outside the arbitrator's authority because they did not serve as a remedy or relief to either party. Seagate argues that there is no distinction between punitive and remedial sanctions, but that even if there was, the term "relief" is broad enough to encompass both.

We look first at the language in the arbitration agreement authorizing the arbitrator to "grant injunctions or other relief" in "any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach" of the employment agreement. "Relief" is defined as "[t]he redress or benefit, esp[ecially] equitable in nature (such as an injunction or specific performance), that a party asks of a court." *Black's Law Dictionary* 1482 (10th ed. 2014). Here, the punitive sanctions issued were requested by Seagate as a redress for the wrong committed by Western Digital and Mao when Mao fabricated evidence. In addition, although punitive sanctions are issued in large part to punish one party, because they also benefit the other party, they are appropriately categorized as a form of relief. The Legislature has also categorized punitive measures as a form of relief, such as when discussing the authority of an arbitrator to award "*punitive* damages or other exemplary *relief*." Minn. Stat.

20

§ 572B.21(a) (2012) (emphasis added).[11]  These sources confirm that punitive sanctions qualify as "injunctions or other relief" as authorized by the arbitration agreement.

The sanctions issued were also authorized by the AAA Employment Rules, which were incorporated into the arbitration agreement and allow the arbitrator to grant "any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs."  AAA Employment R. 39(d).  As we have established, punitive sanctions fall within the ordinary meaning of relief.  Punitive sanctions can also be properly construed as a remedy.  Remedy is defined as "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief" and "anything a court can do for a litigant who has been wronged or is about to be wronged."  *Black's Law Dictionary* 1485 (10th ed. 2014) (quoting Douglas Laycock, *Modern American Remedies* 1 (4th ed. 2010)).  Here, the sanctions were issued in part to redress a wrong, the fabrication of evidence, which harmed Seagate during the arbitration.  Thus, the sanctions constitute a remedy provided to Seagate.

Our conclusion that punitive sanctions are a remedy is also supported by case law.  For example, in *State v. Miller* we equated a punitive sanction with a remedy, noting that a district court sanction excluding certain testimony was a "proper remedy" that "appropriately reflect[ed] the seriousness of the ethical violation and the prejudice to appellant."  600 N.W.2d 457, 468 (Minn. 1999).  Likewise, the Eighth Circuit has found

---

[11]  We reiterate that because this statute was enacted after the arbitration proceedings began in this case, we do not examine here whether Minn. Stat. § 572B.21(a) directly authorizes the use of punitive sanctions in arbitrations.

dismissal to be an appropriate sanction "when there has been a clear record of delay or contumacious conduct by the plaintiff." *Bergstrom v. Frascone*, 744 F.3d 571, 575 (8th Cir. 2014) (citation omitted) (internal quotation marks omitted).[12]

Having established that the sanctions qualify as a "relief or remedy" for purposes of AAA Employment Rule 39(d), we next examine whether the sanctions issued also satisfy the second requirement set out in AAA Employment Rule 39(d). That requirement states that the relief or remedy would "have been available to the parties had the matter been heard in court." The preclusion of evidence or any defense on an issue is a sanction used by courts. *See, e.g.*, *State v. Richards*, 495 N.W.2d 187, 199 (Minn. 1992) (noting that the "preclusion of evidence is a severe sanction"). This type of sanction has also been applied as a response to fabricated evidence. *See, e.g.*, *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989) ("We find the caselaw fully consonant with the view that a federal district judge can order dismissal or default where a litigant has stooped to the level of fraud on the court."); *Vargas v. Peltz*, 901 F. Supp. 1572, 1581 (S.D. Fla. 1995) ("The federal case law is well established that dismissal is the appropriate sanction where a party manufactures evidence which purports to

---

[12]    This conclusion is also supported by decisions from other jurisdictions that have examined similar language in the context of an arbitrator's authority to issue sanctions. *See Polin v. Kellwood Co.*, 103 F. Supp. 2d 238, 264 (S.D.N.Y. 2000) (concluding that sanctions based on attorney misconduct were permissible under the arbitration agreement's broad remedial power, which authorized the arbitrator to "grant any remedy or relief that the arbitrator deems just and equitable"), *aff'd*, 34 F. App'x 406 (2d Cir. 2002); *David*, 54 Cal. Rptr. 2d at 445 (concluding that language in an arbitration agreement authorizing "any remedy or relief to which a party is entitled under California law" permitted the arbitrator to sanction a party for a frivolous claim).

corroborate its substantive claims."); *Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 391 (E.D. Cal. 1992) (ordering the entry of default judgment when defendant committed fraud on the court). Therefore, we conclude that the sanctions issued were of the type that would have been "available to the parties had the matter been heard in court," and as such, they were authorized by AAA Employment Rule 39(d).

Western Digital argues that it did not act with a level of culpability to warrant punitive sanctions and that the arbitrator exceeded the level of authority given to a court to issue punitive sanctions. Likewise, Mao argues that the arbitrator exceeded his authority by not applying sanctions law in the same way that a Minnesota court would have. But the arbitration agreement did not specify that the remedies or relief must be awarded utilizing judicial principles or limitations; instead, the agreement broadly authorized the arbitrator to grant "injunctions or other relief."[13] In addition, although AAA Employment Rule 39(d) requires the relief to be one available to the parties in a court action, it does not require the arbitrator to employ the sanction using the same

---

[13] Mao argues that a provision in the employment agreement stating that the agreement will be governed by the law of Minnesota required the arbitrator to also follow Minnesota law. This provision, however, is located within the section on personal jurisdiction and other matters relating to state and federal courts, not in the section on arbitration. Although this provision may introduce some ambiguity as to the parties' intent to allow punitive sanctions that are only judicial in character, it cannot overcome the clear authorization in the arbitration section of the agreement authorizing "injunctions or other relief" without limitation. *See Mastrobuono*, 514 U.S. at 64 (concluding that where a choice-of-law provision and an arbitration clause in an agreement conflict, the "choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration"). Therefore, we conclude that the choice-of-law provision in the employment agreement was not a restriction on the arbitrator's ability to grant "injunctions or other relief."

standards as any particular court. "Where the arbitrators are not restricted by the submission to decide according to principles of law, they may make an award according to their own notion of justice without regard to the law." *Metro. Waste Control Comm'n v. City of Minnetonka*, 308 Minn. 385, 389, 242 N.W.2d 830, 832 (1976).

Furthermore, we have previously held that arbitrators have broad power to fashion remedies within the scope authorized by the language of the arbitration agreement. *See David Co.*, 444 N.W.2d at 840 (allowing an arbitrator to fashion an equitable award instead of providing a monetary remedy). And we have recognized that "an award will not be vacated merely because the court may believe the arbitrators erred." *Id.*; *see also* Minn. Stat. § 572.19, subd. 1 ("[T]he fact that the relief was such that it . . . would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."). In addition, the AAA Employment Rules do not limit an arbitrator's authority to forms of relief that would have been *granted* by a court; rather, Rule 39(d) references forms of relief that "would have been *available*" in a court. AAA Employment R. 39(d) (emphasis added). This language implies that while arbitrators may be limited to the types of relief available in a court, they are not limited in the manner of awarding these forms of relief by the same rules as a court would have been. Because punitive sanctions were a permissible form of relief and because the arbitrator had discretion in fashioning a remedy, we hold that the arbitrator did not clearly exceed his authority in violation of Minn. Stat. § 572.19, subd. 1(3), by issuing punitive sanctions against Western Digital and Mao.

24

We recognize that entrusting an arbitrator with broad powers over forms of relief could theoretically lead to unfair results in arbitration. Certainly Mao and Western Digital, implicitly if not explicitly, argue that the award here was a result of an out-of-control arbitrator or was otherwise unjust.[14] Some believe that arbitration has benefits, potentially including faster resolution and less expense than the judicial system as well as a high degree of confidentiality. Christopher R. Drahozal & Stephen J. Ware, *Why Do Businesses Use (or Not Use) Arbitration Clauses?*, 25 Ohio St. J. on Disp. Resol. 433, 451-52 (2010). But the benefits come with costs, including significantly less oversight of decisions, evidentiary and otherwise, and very limited review of the final award. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (stating that by agreeing to arbitrate, parties "trade[] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration").

Here, despite the best efforts of experienced appellate counsel to argue otherwise, Mao and Western Digital's decision to demand arbitration necessarily limited the availability of the protections and advantages of the judicial system. *See Bowles Fin. Grp., Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1011 (10th Cir. 1994) ("Those who choose to resolve a dispute by arbitration can expect no more than they have agreed. One choosing arbitration should not expect the full panoply of procedural and substantive

---

[14] Arbitrator performance and the fairness of the result are, of course, disputed by the parties. For example, the amount of the award here, exceeding one half-billion dollars, is characterized as excessive by Mao and Western Digital. Seagate notes in response that the arbitrator's award was one-third of Seagate's maximum damage claim. We take no position on the merits of these arguments.

25

protection offered by a court of law."). In addition, we reiterate that the scope of arbitrator authority is a matter of contract, *Law Enforcement Labor Servs.*, 527 N.W.2d at 824, and parties are always free to fashion arbitration agreements in ways that limit the arbitrator's power to award certain types of relief.

B.

We next review whether an arbitrator's imposition of sanctions that preclude any evidence or defense on a claim warrants vacatur as a refusal to hear evidence. Minnesota Statutes § 572.19, subd. 1(4), states that a court shall vacate an arbitration award if "[t]he arbitrators . . . refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 572.12, as to prejudice substantially the rights of a party." Section 572.12 provides, "The parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." Minn. Stat. § 572.12(b) (2010). The district court concluded that the arbitrator's decision to preclude Western Digital and Mao's evidence on Trade Secrets 4-6 constituted a failure to hear material evidence in violation of Minn. Stat. § 572.19, subd. 1(4); the court of appeals did not address this issue. We review de novo whether the sanctions imposed constituted a refusal to hear evidence material to the controversy and substantially prejudiced the rights of Western Digital and Mao, as described in Minn. Stat. § 572.19, subd. 1(4). *See Hibbing Educ. Ass'n v. Pub. Emp't Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985) (stating that statutory construction is a question of law subject to de novo review on appeal).

Western Digital and Mao argue that the punitive sanctions issued against them violated the arbitrator's duty to hear material evidence. Again, the sanctions precluded "any evidence or defense by Western Digital and Dr. Mao" that disputed the validity of Seagate's asserted Trade Secrets 4-6, the misappropriation of those trade secrets, or that Western Digital had used those trade secrets. The sanctions also entered "judgment against Western Digital and Dr. Mao of liability for misappropriation and use of" Trade Secrets 4-6. Western Digital and Mao argue that these sanctions constitute a refusal to hear their evidence and violate principles of fundamental fairness. Seagate responds that the arbitrator heard both sides of the controversy before issuing the award, as Western Digital and Mao were allowed to present witnesses and other evidence, and the court received these submissions. Seagate also characterizes the sanctions as evidentiary determinations, with the arbitrator choosing to not assign weight to evidence that he did not find credible, and argues that the interpretation of the statute proposed by Western Digital and Mao would construe any evidentiary decision as a refusal to hear material evidence.

We begin by noting that the arbitrator heard the challenged evidence at the request of Western Digital and Mao and conducted the hearing in accordance with section 572.12, which requires that the parties be heard, be allowed to present evidence material to the controversy, and be allowed to cross-examine the witnesses appearing at the hearing. Western Digital and Mao's challenge, therefore, centers not around the admission of evidence, but rather around the arbitrator's failure to use that evidence when constructing the final award. This challenge differs from our previous case law

27

concerning an arbitrator's refusal to hear evidence, which has generally involved preventing a party from testifying or submitting certain evidence. *See, e.g.*, *Redner v. N.Y. Fire Ins. Co.*, 92 Minn. 306, 309, 99 N.W. 886, 887 (1904) (involving arbitrators who "refused the plaintiff the privilege of appearing before them, and refused to hear any evidence whatever from the plaintiff, or the witnesses produced by him, or any testimony on his behalf").

The scope of Minn. Stat. § 572.19, subd. 1(4), is properly limited to situations involving the presentation and admission of evidence at the hearing, not situations involving the use or weighing of evidence in constructing the final award or other form of relief. This conclusion is supported by the language of Minn. Stat. § 572.19, subd. 1(4), including the incorporation of Minn. Stat. § 572.12. Minnesota Statues § 572.19, subd. 1(4), focuses on how an arbitrator should conduct a hearing. It addresses an arbitrator's refusal to postpone the hearing, an arbitrator's refusal to "*hear* evidence material to the controversy," and an arbitrator's violations of Minn. Stat. § 572.12, which again centers on how a hearing should be conducted. Minn. Stat. § 572.19, subd. 4 (emphasis added); *see* Minn. Stat. § 572.12 (detailing how to conduct a hearing, including that an arbitrator shall appoint a time and place for the hearing, notify the parties about the hearing, adjourn the hearing, and receive evidence at the hearing). Nothing in either Minn. Stat. § 572.19, subd. 1(4), or Minn. Stat. § 572.12, describes how an arbitrator is to fashion a remedy for misconduct or the final award; the entire focus of these statutes is how the hearing itself should be conducted, not the deliberation process that happens after the hearing.

Based on an analysis of the statutory language, we conclude that it is appropriate to read Minn. Stat. § 572.19, subd. 1(4), as a provision concerned with the admissibility of evidence and the manner in which the hearing is conducted, not as a provision limiting the arbitrator's authority to use, or refuse to use, certain evidence when providing relief or fashioning an award after the hearing has been completed. In this case, Western Digital and Mao do not challenge any of the arbitrator's actions during the hearing, as Western Digital and Mao were allowed to present their case in full and the arbitrator received the evidence in question. But the arbitrator chose not to factor this evidence into the final award because of sanctions that were awarded and, as discussed above, were permissible as within the arbitrator's authority. In short, Western Digital and Mao's challenge, which is primarily about the arbitrator's refusal to use certain evidence in fashioning the final award, is outside the scope of Minn. Stat. § 572.19, subd. 1(4).

III.

Having concluded that the arbitrator did not exceed his authority or refuse to hear material evidence as provided in Minn. Stat. § 572.19, subd. 1, we affirm the court of appeals' decision reinstating and confirming the arbitration award in full. Because the award is confirmed and no rehearing is required, we do not reach the issue of whether the district court erred in ordering a new arbitrator for the rehearing of issues related to Trade Secrets 4-6.

Affirmed.

CONCURRENCE

STRAS, Justice (concurring).

I agree with the court that none of the grounds for vacating an arbitration award are present here. *See* Minn. Stat. § 572.19, subd. 1 (2010). I am less certain, however, that the court's analysis of waiver is correct.

When the court answers the question of what happens to a party's challenge to the authority of the arbitrator under Minn. Stat. § 572.19, subd. 1(3), in the absence of an objection during the course of the arbitration, it answers only half of Seagate's argument. The other half of Seagate's argument is, and always has been, that Mao and Western Digital impliedly (yet intentionally) waived their challenges to the authority of the arbitrator when they asked the arbitrator to impose sanctions, including attorney fees and costs, on Seagate.

The record seems clear on this point. When Western Digital first moved to vacate the arbitration award, Seagate's response was that "Western Digital waived its objections to imposition of sanctions by itself requesting sanctions." Although the district court disagreed with Seagate, it accurately summarized Seagate's position as follows: Mao and Western Digital agreed that the arbitrator had the authority to impose sanctions by "(1) . . . not argu[ing] that the Arbitrator had no authority to impose sanctions, *and (2) [themselves] request[ing] sanctions*" (emphasis added). Seagate advanced the same argument before the court of appeals, stating that, "having invoked the Arbitrator's sanctioning power, [Mao and Western Digital] cannot seriously dispute that power." This time, Seagate prevailed because the court of appeals concluded that Mao and

C-1

Western Digital "waived their challenge to the arbitrator's authority to impose sanctions by (1) failing to make that challenge to the arbitrator during the arbitration *and (2) requesting the arbitrator to impose sanctions against [Seagate]." Seagate Tech. v. W. Digital Corp.*, 834 N.W.2d 555, 561 (Minn. App. 2013) (emphasis added). Seagate argues yet again in its brief to this court that Mao and Western Digital waived their challenges when they "told the Arbitrator he had 'inherent' sanctioning power, and invited him to use that power." Western Digital responds to Seagate's implied-waiver argument in its brief, *see* Br. of Western Digital Corp. 45 ("Nor did Western Digital and Dr. Mao seek 'to invoke the very authority of the arbitrator that they now seek to challenge' . . . ." (quoting *Seagate*, 834 N.W.2d at 562)), yet the court remains strangely silent.

It is possible that the court confuses forfeiture with waiver. The absence of an objection, standing alone, would raise a question of forfeiture. " '[F]orfeiture is the failure to make the timely assertion of a right,' " *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)), usually through "failing to raise a timely objection," *see United Student Air Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). Seagate's argument, by contrast, raises a question of waiver: whether Mao's and Western Digital's actions during the arbitration, coupled with their failure to object, constituted the "intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

In any event, by focusing on the absence of an objection by Mao and Western Digital, the court silently converts a question of waiver into one of forfeiture. The court

answers the forfeiture question easily enough, because, as it concludes, the statute requires an objection only when an argument for vacatur rests on the absence of an arbitration agreement. *See* Minn. Stat. § 572.19, subd. 1(5). The court's answer, however, only partially responds to Seagate's argument.

An example illustrates my point. Suppose the parties had expressly agreed to waive their rights to challenge the arbitrator's authority to impose punitive sanctions. Under those circumstances, presumably the court would not allow Mao and Western Digital to seek vacatur, notwithstanding the fact that the relevant statutory provisions do not require an objection. Seagate's argument is that this case is no different, and that the real question is whether Mao's and Western Digital's conduct had the same effect as an express waiver. On that question, the text of section 572.19 does not yield an easy answer.

Because the waiver issue is both difficult[1] and unnecessary to our decision, I see no reason to address it. But if the court insists on doing so, it should answer the question actually posed, not one of its own making.

---

[1]     In fact, Seagate's argument may be more complex than either Seagate or the court appreciates. In addition to waiver, Seagate's argument, extended to its logical ends, may also implicate principles of estoppel. *See Twomey v. Durkee*, 291 N.W.2d 696, 698-99 (Minn. 1980) (holding that parties who "acquiesc[ed] in and participat[ed] in" an arbitration proceeding were estopped from later arguing that they had not agreed to arbitration). However, because Seagate does not expressly argue that Mao and Western Digital are estopped from challenging the arbitrator's authority, I will not address this possibility further.