*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1187**


The Jamar Company,
Respondent,

vs.

Independent School District No. 2142,
St. Louis County Schools, Minnesota,
Appellant.


**Filed May 18, 2015
Reversed and remanded
Chutich, Judge**

St. Louis County District Court
File No. 69VI-CV-13-260

Dean B. Thomson, Matthew T. Collins, Lucas T. Clayton, Fabyanske, Westra, Hart &
Thomson, P.A., Minneapolis, Minnesota (for respondent)

Stephen M. Knutson, Michelle D. Kenney, Knutson, Flynn & Deans, P.A., Mendota
Heights, Minnesota (for appellant)


        Considered and decided by Smith, Presiding Judge; Chutich, Judge; and

Minge, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellant Independent School District No. 2142, St. Louis County Schools (the school district) challenges the district court's decision to vacate an arbitration award designating the school district as the prevailing party in a construction contract dispute. The school district further argues that the district court erred in modifying the arbitration award to name respondent Jamar Company as the prevailing party entitled to attorney fees. Because the arbitrator did not exceed his authority in designating the school district as the prevailing party, we reverse and remand for the district court to calculate the appropriate amount of attorney fees to award in favor of the school district.

## FACTS

In August 2010, Jamar signed a $1,430,485 contract with the school district to construct a roof for a new school building in New Independence. Installation of the new roof was to begin on February 3, 2011, and be completed by March 31, 2011. The contract stated that Jamar would install a certain type of roof, known as a sure-white roofing system, which could only be installed if the surface and/or ambient temperature was 25 degrees Fahrenheit or warmer. The contract also specified that Jamar was responsible for ensuring that it could install the roof despite winter conditions.

In early November 2010, Jamar told the school district, through the project construction manager, that installation of the sure-white roofing system would be impossible because the temperature would likely remain below 25 degrees Fahrenheit for at least some of the installation period. Despite Jamar's breach, the school district chose

not to terminate the contract and instead elected to accommodate Jamar and change to an alternative hot-mopped roof system. On March 7, 2011, the school district issued a construction change directive to allow Jamar to proceed with installation of the hot-mopped system.

In August 2011, Jamar estimated that changing to the hot-mopped roof had cost an additional $183,000. The school district refused to pay this amount. On April 16, 2012, Jamar initiated an arbitration proceeding to recover the cost of installing the hot-mopped system, seeking $149,308.65 in damages plus interest, fees, and costs. The school district counterclaimed, seeking an award of $75,000 plus interest, fees, and costs. Before the arbitration in September 2012, Jamar hired an expert witness to review its claim and as a result, reduced its demand to $86,786.72.

During arbitration, Jamar argued that the temperature only became an issue after the project construction manager, Kraus-Anderson, moved its installation schedule up to early January. The arbitrator found that this argument was inconsistent with testimony presented because Kraus-Anderson did not raise the issue of moving up the schedule until December 2010 and Jamar asked to change the roof type in November. Indeed, Jamar's own expert testified that the proposed change in the construction schedule was immaterial because Jamar would have needed to use some form of winter protection regardless of whether the work was performed in January or February.

The arbitrator awarded Jamar $40,809.22. The arbitrator determined that Jamar breached its contract when it refused to install the sure-white roofing system but that the school district waived its right to terminate the contract when it elected to accept the hot-

mop roof system. The arbitrator stated that Jamar had originally priced its work on the hot-mopped system at $183,000, and reduced it to $149,000, then to $86,786.72, and ultimately recovered only $40,809.22. The arbitrator stated that "[i]f Jamar had accurately calculated the costs for the changed work from the beginning, this entire dispute would have likely been avoided." The arbitrator then concluded that the school district was the prevailing party and awarded it $109,454.85 for attorney fees and $10,300 for expert-witness fees.

Jamar moved to vacate and modify the arbitration award in district court, arguing that the arbitrator exceeded his authority. The district court granted Jamar's motion and vacated the portion of the arbitration award designating the school district as the prevailing party. It concluded that the arbitrator exceeded his authority by relying on facts outside the record, specifically focusing on the arbitrator's statement that "[i]f Jamar had accurately calculated the costs for the changed work from the beginning, this entire dispute would have likely been avoided." The district court characterized this statement as "pure speculation and without any evidentiary support in the record." The district court also modified the award and named Jamar as the prevailing party entitled to recover attorney fees and costs and remanded the issue of calculating attorney fees to the arbitrator.

The school district then appealed the district court's decision to vacate and modify the arbitration award. This court dismissed the appeal because it was taken from a nonfinal order. Jamar next moved the arbitrator for an award of all attorney fees, costs, and disbursements that it had incurred.

4

The arbitrator issued a modified award, granting Jamar $125,865.20 in attorney fees, costs, and disbursements relating to the arbitration. The arbitrator declined to award Jamar attorney fees for its motion to vacate and modify the arbitration award, stating that these amounts would be "more appropriately addressed by the District Court."

Accordingly, Jamar filed a motion in district court to confirm the arbitration award. The district court confirmed the award and concluded that Jamar's motion for attorney fees was timely. The district court also granted Jamar an additional $37,374.58 for attorney fees and costs incurred in the lawsuit following the arbitration. The school district appealed.

**D E C I S I O N**

The arbitration process is favored in the law. *Ehlert v. W. Nat'l Mut. Ins. Co.*, 296 Minn. 195, 199, 207 N.W.2d 334, 336 (1973). Arbitrators make final determinations of law and fact. *Grudem Bros. Co. v. Great W. Piping Corp.*, 297 Minn. 313, 316, 213 N.W.2d 920, 922-23 (1973). An arbitration award is set aside "only when the objecting party meets its burden of proof that the arbitrators have *clearly* exceeded the powers granted to them in the arbitration agreement." *Seagate Tech., LLC v. W. Digital Corp.*, 854 N.W.2d 750, 760-61 (Minn. 2014) (quotation omitted).

In reviewing the arbitrator's authority, this court exercises every reasonable presumption "in favor of the finality and validity of the award." *Nat'l Indem. Co. v. Farm Bureau Mut. Ins. Co.*, 348 N.W.2d 748, 750 (Minn. 1984). Thus, an appeal from an arbitration decision is "subject to an extremely narrow standard of review." *Hunter, Keith Indus., Inc. v. Piper Capital Mgmt. Inc.*, 575 N.W.2d 850, 854 (Minn. App. 1998).

5

This court reviews the scope of an arbitrator's authority de novo. *Seagate Tech.*, 854 N.W.2d at 760.

The school district argues that the contract gave the arbitrator broad discretion to designate a prevailing party and sufficient evidence in the record supported his decision. Jamar contends that the arbitrator exceeded his authority in designating the school district as the prevailing party because the award relied on evidence outside the record. We agree with the school district.

"The scope of an arbitrator's authority is a matter of contract interpretation to be determined from a reading of the parties' arbitration agreement." *Cnty. of Hennepin v. Law Enforcement Labor Servs., Inc., Local No. 19*, 527 N.W.2d 821, 824 (Minn. 1995). Arbitration awards will be set aside if the objecting party shows that the arbitrator has clearly exceeded the powers granted in the arbitration agreements. *Seagate Tech.*, 854 N.W.2d at 760–61. "[C]ourts will not overturn an award merely because they may disagree with the arbitrators' decision on the merits." *Id.* at 761 (quotation omitted).

Here, the contract between the two parties stated, "[T]he 'prevailing party' shall be determined by Arbitrator(s)." The term "prevailing party" was not defined in the contract. The contract therefore gave the arbitrator complete discretion to name the prevailing party.

Despite this broad discretion, Jamar contends that the arbitration award lacked evidentiary support because it relied on an assumption outside the record—that the conflict could have been avoided had Jamar accurately calculated the cost for the

changed work at the outset. After carefully reviewing the arbitrator's decision, we disagree.

The evidence here shows that Jamar breached the contract, the school district accommodated the breach, and Jamar's explanation for the breach was not credible and belied by the testimony of its own expert witness. The record also shows a notable discrepancy between Jamar's initial asking price of $183,000, and its ultimate recovery of $40,809.22. Jamar argues that this discrepancy was not a "fact" in the record and that the arbitrator exceeded his authority by inferring that the entire litigation would have been avoided had Jamar priced its work reasonably at the outset.[1] But the arbitration award did not rest solely on this discrepancy, and even if it were part of the arbitrator's reasoning, the arbitrator's reliance on it was not an error warranting vacation of the award. *See Garvey*, 532 U.S. at 509, 121 S. Ct. at 1728 (stating that an arbitrator's improvident and even "silly" fact-finding is not a basis for a reviewing court to refuse to enforce the award).

Jamar also cites to numerous federal cases for the proposition that vacating an arbitration award is warranted when the record reveals *no* support whatsoever for the arbitrator's determination. We reject this argument because, as stated above, sufficient

---

[1] The arbitrator's statement could also reasonably be interpreted as a way of chastising Jamar. But regardless of the statement's interpretation, it was not the only fact supporting the arbitration award and is therefore not a basis upon which the award can be vacated. *Cf. Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 510, 121 S. Ct. 1724, 1728 (2001) ("It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable" (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 1361 (1960))).

7

evidence in the record supports the arbitration award. Moreover, these federal cases are all distinguishable because, contrary to the situation here, the arbitrators in those cases either relied on obvious mistakes of fact or modified clear contractual language. *See United Elec. Radio & Mach. Workers of Am., Local 1139 v. Litton Microwave Cooking Prods., Litton Sys. Inc.*, 704 F.2d 393, 396-97 (8th Cir. 1983) (concluding that the arbitrator erroneously calculated the work week); *Storer Broad. Co. v. Am. Fed'n of TV & Radio Artists, Cleveland Local, AFL-CIO*, 600 F.2d 45, 48 (6th Cir. 1979) (determining that the arbitrator's finding that the union told its members they would receive credited amounts in their profit sharing accounts was wholly unsupported in the record); *Detroit Coil Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 580–81 (6th Cir. 1979) (concluding that the arbitrator modified clear and unambiguous language in a collective bargaining agreement).

Jamar further contends that the arbitration award is irreconcilable with Minnesota cases that define "prevailing party." We need not reach this issue, however, because arbitration awards "will not be reviewed or set aside for mistake of either *law* or fact in the absence of fraud, mistake in applying its own theory, misconduct, or other disregard of duty." *See Seagate Tech., LLC v. W. Digital Corp.*, 834 N.W.2d 555, 565 (Minn. App. 2013) (emphasis added) (quotation omitted), *aff'd*, 854 N.W.2d 750 (Minn. 2014). Because the arbitrator here did not engage in the type of conduct that would warrant a review of the award, we decline to review the award for a misapplication of Minnesota caselaw. *See id.*

Lastly, Jamar argues that the arbitrator's "irrational analysis regarding potential settlement demonstrates 'evident partiality' against Jamar" and is another basis for affirming the district court's vacation of the arbitration award. A district court shall vacate an arbitration award if the arbitrator shows "evident partiality." Minn. Stat. § 572B.23(a)(2)(A) (2014). But Jamar cites no compelling evidence to show that the arbitrator demonstrated evident partiality here: the contract empowered the arbitrator to designate a prevailing party and the arbitrator did so. *Cf. Ag Servs. of Am., Inc. v. Schroeder*, 693 N.W.2d 227, 236–37 (Minn. App. 2005) (concluding that receiving an adverse ruling is not a proper basis upon which to impute bias to a district court judge). Accordingly, this contention fails.

In sum, we conclude that the vacation and modification of the arbitration award was improper because the arbitrator did not exceed his authority or demonstrate evident partiality, and the record supported his award. The original arbitration award is therefore reinstated, and we reverse the attorney fees and costs awarded to Jamar for the arbitration and ensuing litigation. We also remand for the district court to calculate reasonable attorney fees, costs, disbursements, and interest in favor of the school district. Given our conclusion above, we need not address the school district's argument regarding the timeliness of Jamar's motion for attorney fees.

**Reversed and remanded.**